Anthony RAMIREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–84–101–CR.

Court of Appeals of Texas,
Waco.

May 23, 1985.

---

Ray J. Black, Waco, for appellant.

Vic Feazell, Criminal Dist. Atty., Crawford Long, Asst. Dist. Atty., Waco, for appellee.

## OPINION

THOMAS, Justice.

Appellant was assessed ten years in prison and a $5,000 fine for kidnapping. He claims that the court erred when it refused to instruct the jury on the lesser-included offense of false imprisonment and when it overruled his objections to the State's closing argument. The judgment is affirmed.

On the night of November 12, 1983, Marilyn Prince and Letha Kee were seated in a car parked outside of a bar, drinking beer and discussing whether to enter the bar, when two men approached the car and asked the women if they wanted to smoke "some weed" (marihuana). When they agreed, one of the men, Echols, asked the women to drive him and Appellant to Echols' car to get the "stuff". After the men entered the car, Echols placed a pistol to Prince's head and threatened to kill her if the women did not accompany him and Appellant. Prince drove out of the parking lot and then stopped the car to let Echols drive. When Prince stopped the car both women jumped from the car and ran.

Kee ran to the guard station at the General Tire manufacturing plant and called police; however, Echols and Appellant chased and caught Prince after she fell. During the ensuing struggle Prince pulled the trigger of the pistol twice, but the gun did not fire. Echols finally regained control of the pistol and handed it to Appellant who ordered Prince into the back seat of the car. Appellant also started to get into the back seat with Prince, but Echols told him to sit in the front seat. Echols then drove the car while Appellant sat in the front seat holding the pistol. Responding to Kee's call for assistance, police officers located Prince's car and chased it. During the chase, which involved gunfire from the officers in hot pursuit, Appellant threw the pistol out of the car. Officers finally stopped the car and arrested Echols and Appellant.

In his first ground Appellant contends that the court erred when it refused to instruct the jury on false imprisonment as a lesser-included offense of kidnapping. He argues that, if he was guilty of any offense at all under the evidence, he was only guilty of false imprisonment because the State failed to prove an essential element of the offense of kidnapping: that Prince had been abducted by the use of or the threat to use deadly force. At trial the State introduced into evidence the pistol which was recovered by police at the place where Appellant threw the gun out of the car window. Prince identified the pistol as the one used by Echols and Appellant. A police officer, trained in firearms, identified the weapon as a pellet pistol, but he did not testify about its character as a deadly weapon. Appellant thus contends that the State failed to prove that a threat to use deadly force had been made to abduct Prince because the evidence was insufficient to prove that the pellet pistol was a deadly weapon. This ground cannot be sustained.

■ A person commits kidnapping if he intentionally or knowingly *abducts* another person. Tex.Penal Code Ann. § 20.-03(a) (1974). "Abduct", as used in section 20.03(a), means to restrain a person with intent to prevent his liberation by, among other means, using or threatening to use deadly force. Tex.Penal Code Ann. § 20.-01(2)(B) (1974). However, a person only commits false imprisonment if he intentionally or knowingly *restrains* another person. Tex.Penal Code Ann. § 20.02(a) (1974). Appellant assumes in his brief that he could not be found guilty of kidnapping Prince unless a deadly weapon was used to support or enforce a threat to use deadly force to abduct her. We reject this assumption.

■ Although "deadly force" is not defined in Chapter 20 of the Penal Code (Kidnapping and False Imprisonment), that term is defined in Chapter 9, section 9.01(3), of the Penal Code (Justification Excluding Criminal Responsibility). However, the term "deadly force" found in section 20.01(2)(B) is not limited to the technical definition of that term in section 9.01(3). *Phillips v. State,* 597 S.W.2d 929, 934 (Tex.

Cr.App.1980). In defining "abduct", section 20.01(2)(B) does not require that a deadly weapon be used or exhibited to threaten the use of deadly force, and we will not write such a requirement into the statute by judicial construction.

A threat can be communicated to a victim by acts, words or deeds. *See, e.g., Berry v. State,* 579 S.W.2d 487, 489 (Tex. Cr.App.1979); *Rogers v. State,* 550 S.W.2d 78 (Tex.Cr.App.1977). Logically, a threat to use deadly force to abduct a person can be communicated by words alone, separate and apart from exhibiting a deadly weapon. When Echols first placed the pistol to Prince's head, he warned her to do as he said, "if she valued her life". This threat had its intended effect because Prince testified that she was afraid the men would kill her if she refused to follow their instructions. This evidence, standing alone, was sufficient to prove that Echols had threatened to use deadly force in order to abduct Prince. As a party to the offense, Appellant was also guilty of kidnapping. *See Pitts v. State,* 569 S.W.2d 898 (Tex.Cr.App. 1978); Tex.Penal Code Ann. §§ 7.01, 7.02 (1974). Because the evidence did not show that Appellant was only guilty, if at all, of false imprisonment, the court did not err when it refused to instruct the jury on the lesser-included offense of false imprisonment. *See Broussard v. State,* 642 S.W.2d 171 (Tex.Cr.App.1982). Ground one is overruled.

Appellant contends in his second ground of error that the State committed reversible error in its closing jury argument during the guilt-innocence phase. He complains of four instances where the State allegedly appealed to prejudice or inflamed the jury. This ground also lacks merit.

Jury argument is permissible if it falls within any of the following categories: (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to argument of opposing counsel; or (4) a plea for law enforcement. *Darden v. State,* 629 S.W.2d 46, 52 (Tex. Cr.App.1982); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). Each instance of which Appellant complains falls within the bounds of permissible jury argument.

The thrust of Appellant's jury argument was that he was an unwilling participant in the offense. The State answered this argument by pointing out that, among other things, Appellant had slapped Prince, had pointed the gun at her and had forced her into the back seat of the car after she had been recaptured. Defense counsel argued that Appellant's attempt to enter the back seat of the car with Prince was an act of "submission" by Appellant to Echols' authority. The State responded to this particular argument by stating:

[PROSECUTOR]: And that business about, oh, he just wanted to get in the back of the car to console her, do you believe that baloney?

[DEFENSE COUNSEL]: Objection, Your Honor. Nobody made any comment about wanting to console her. That's a misstatement.

[PROSECUTOR]: That's what [defense counsel] argued on to the jury.

THE COURT: The jury will recall the testimony as they heard it.

Overrule the objection.

[PROSECUTOR]: I'm sorry, if [defense counsel] didn't say that. He said [Appellant] wanted to get in the back with her, and then I thought he said it. I think you ladies and gentlemen can draw some conclusions from that.

The State's argument was in response to Appellant's assertion that he was going to enter the back seat with Prince because he was submitting to Echols' authority and direction. Because Appellant raised the question about his motive for starting to enter the back seat with the victim, the State could argue that his motive was to facilitate the kidnapping.

Appellant also argued during summation that the State should have charged and prosecuted him for false imprisonment rather than kidnapping. The prosecutor in his closing argument answered this contention as follows:

[PROSECUTOR]: [Defense counsel] says, why didn't we charge [Appellant] with what he did, rather than maybe some other offense he did? My lord, Ladies and Gentlemen, the only other offense—where were they going to take that girl? We don't have—

[DEFENSE COUNSEL]: Objection, Your Honor. That's highly speculative. It's intended only to inflame the jury.

THE COURT: Overrule the objection.

[PROSECUTOR]: You heard about them driving her around. Where were they taking her? We don't have any other offense committed, I think, because the police got there. You can judge that for yourself. I think what we have is bad enough, thank goodness, we don't have something worse.

The court did not err when it overruled Appellant's objection to this argument because the State was entitled to respond to Appellant's argument that the State should have only charged him with a lesser-included offense.

■ The prosecutor also included the following comments in his closing argument which drew an objection from Appellant:

[PROSECUTOR]: There is only one thing—one thing about this case that worries me. It worried me from the start when we prosecuted it, and it worries me now. And that is, sometimes when the victim is of a minority race, and sometimes when the victim has done other things that we consider wrong, the jury will just say, what the heck, I don't care, they had it coming to them. Sometimes, for some reason, the jury gets that twisted notion. I don't think you all will. It's something that always worries a prosecutor when they take a case to the jury.

You heard about [Prince] and [Kee] and I think they were entirely honest in their testimony to you. They told you about the marijuana. That's a bad thing. If they had been arrested with marijuana in their possession, I would prosecute them for it. But because they did something like that, I hope you won't turn

[Appellant] loose to do that same sort of thing to somebody else. Maybe next time it would be the bank president's wife.

[DEFENSE COUNSEL]: Objection, Your Honor. That's intended for nothing but solely to inflame the jury.

THE COURT: Overrule the objection.

[PROSECUTOR]: Ladies and Gentlemen, we have to protect every citizen in this county. Because if we don't protect everybody, eventually, we reach the point where we start protecting nobody.

The prosecutor's argument was permissible because it was a plea for equitable protection of the law and equitable law enforcement.

■ Finally, Appellant objected to the following statements made by the prosecutor during argument:

[PROSECUTOR]: If after all [Appellant] did, you want to let that man go and turn him loose, you can just turn on the green light to his being able to do that to anybody in the state, if he wants to.

[DEFENSE COUNSEL]: Objection, Your Honor. Again, that is intended to inflame the jury.

THE COURT: Overrule the objection.

[PROSECUTOR]: I think, that as the conscience of the community, you're not going to do that.

This argument constituted a permissible plea for law enforcement.

The court did not err in overruling Appellant's objections to the State's argument. Accordingly, ground two is overruled. The judgment is affirmed.