Carlos **SALAZAR**, Appellant,

v.

**STATE of Texas**, State.

No. 2–86–059–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 5, 1987.

Rehearing Denied Feb. 18, 1988.

Rick Bowman, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Stanton, Asst., Fort Worth, for State.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION ON REHEARING

FARRIS, Justice.

In our original opinion and judgment issued in this case on March 12, 1987, we affirmed appellant's conviction of aggravated robbery with a deadly weapon and his sentence by a jury to forty years confinement in the Texas Department of Corrections. *See* TEX. PENAL CODE ANN. sec.

29.03(a)(2) (Vernon 1974). Following that date, appellant filed a motion for rehearing. We granted rehearing and abated the case to the trial court for a *"Batson* hearing" in accordance with *Henry v. State,* 729 S.W. 2d 732 (Tex.Crim.App.1987). We withdraw our original opinion and substitute this therefor.

Appellant's first point of error challenges the sufficiency of the evidence upon which to base his conviction. Without citation, appellant claims that the identification of appellant by three eyewitnesses to the offense was not sufficient evidence on which to convict.

■■■ In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State,* 668 S.W. 2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim.App.1984); *Wilson v. State,* 654 S.W. 2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.*

James Palmer testified that he was employed by the Kroger's Food Store as a grocery checker on the date of the robbery. He testified that, at approximately 12:30 a.m., on March 23, 1985, he observed, through the entrance to the store, two Hispanic males putting on the hoods of their "jumpsuits." Both men came into the store and went to different locations. One of the men came to Palmer's checkstand, held a gun to Palmer's head, and told him to open the register. The witness stated that, although the hood was pulled over the man's head, his face was exposed. Palmer further testified that the store was well lit and he got a good look at the robber, face to face, for approximately one minute during the robbery. After the robbery occurred, Palmer went to the police station and picked out a photograph of appellant from a photo lineup, stating that he was "a hundred percent sure" that the man in this photograph was the person who put a gun to his head. At trial, Palmer pointed to appellant and stated that he was "positive" that appellant was the man who stuck the gun to the back of his head.

Eve Harris testified that she was a customer at Palmer's checkout stand when the robbery in question occurred. Harris first noticed appellant when she "was faced with the robbers almost head-on...." Both of the robbers were of Spanish race, wearing sweatshirts, with hoods over their head, and blue jeans. Harris testified that the store was well lit and she saw appellant "[f]or probably a moment real—just real close; eye to eye." Harris also picked appellant's photograph out of a photo lineup conducted by the police department, stating that she "will always remember the face because it was the face that had the gun pointed in my face." At trial, Harris identified appellant as the person who committed the robbery, and whom she picked out of the photo lineup.

Don Shelton testified that he was a customer at Kroger's on the night of the robbery in question. As Shelton was entering the store, he brushed into a man who was evidently leaving without making a purchase. Shelton testified that nothing was obstructing his view of the man, nothing was on the man's head, and he got a good look at the person's face. About two minutes later, Shelton was walking toward the produce area of the store when he heard the entrance doors buzz, meaning that someone was coming into the store. Shelton turned around and saw two Hispanic males, with guns, walk into the store. One of the men was the same person Shelton

had brushed into as he entered the store. The person went over to the checkout stand operated by witness Palmer. Shelton noticed that the man was now wearing the hood of his sweat top up over his head. The witness ducked behind the display stand in the store and looked out over the stand, seeing the entire robbery. Shelton stated that he had a good opportunity to view the robber, that nothing was between himself and the robber, and that the lighting was good. When the robber went to the checkout stand, Shelton looked directly at the robber's face for approximately three minutes. From a photospread, Shelton identified a photograph of appellant. Shelton later pointed out appellant in court, stating that he was "completely sure" that this man was the person who committed the robbery.

We hold that the testimony from these witnesses constitutes sufficient evidence to enable any rational trier of fact to have found beyond a reasonable doubt that appellant committed the crime. *See Pichon v. State*, 683 S.W.2d 422 (Tex.Crim.App. 1984); *Holloway v. State*, 666 S.W.2d 104 (Tex.Crim.App.1984). Appellant's first point of error is overruled.

■ Appellant contends, in his second point of error, that the trial court erred in allowing the State to bolster the in-court identification of appellant by the three witnesses by permitting them to testify that they had picked appellant out of a photospread before trial. Appellant contends that it was unconscionable for the trial court to permit these witnesses to bolster their in-court identification of appellant before their testimony had been impeached.

Bolstering occurs when a witness is called to corroborate the unimpeached testimony of another witness. *Lyons v. State*, 388 S.W.2d 950, 951 (Tex.Crim.App.1965). Although no one else may bolster the witness's in-court identification by testifying as to a pretrial identification of the defendant by the witness, no bolstering occurs when a witness, who has identified a defendant at trial, also testifies that he identified the defendant in a pretrial lineup. *Wyatt v. State*, 566 S.W.2d 597, 601 (Tex.

Crim.App.1978); *Sanders v. State*, 688 S.W.2d 676, 679 (Tex.App.—Dallas 1985, pet. ref'd); *Lewis v. State*, 631 S.W.2d 813, 815 (Tex.App.—Fort Worth 1982, no pet.). Therefore, the trial court committed no error in allowing the three witnesses who identified appellant at trial to also testify as to a previous identification of appellant in a photospread. Point of error two is overruled.

■ In his third point of error, appellant contends that the State arbitrarily struck all minority veniremen solely on the basis of their race. We affirm the trial court's finding that the evidence was insufficient to establish an inference of purposeful discrimination in the State's use of peremptory challenges.

The State used peremptory challenges to strike all of four prospective minority jurors from the jury panel. One such juror, Catalina Gonzalez, was a Mexican–American female. The prosecutor offered two reasons for exercising a strike against her. First of all, Mrs. Gonzalez was a Seventh Day Adventist who held a Master of Divinity degree. The prosecutor felt that this religious background would cause her to favor rehabilitation at the punishment phase of the trial. Second, Mrs. Gonzalez had the same surname as the appellant's trial counsel, Alex Gonzalez. The prosecutor stated that he thought it was possible she might tend to favor appellant's position because she had the same surname as his lawyer.

The remaining three minority members struck from the panel were black. According to the prosecutor, Joe Gilliam was struck because his education and employment might lead him to hold the State to a higher burden of proof or make him favor appellant's position on punishment. Betty Richardo was struck because the prosecutor believed that her job as a quality control inspector would cause her to hold the State to a higher burden of proof. The prosecutor based his strike against Jerelene Irvin on the fact that she kept children for a living and might be swayed during the punishment phase because appellant had a family.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court determined that a state cannot use peremptory challenges to purposefully discriminate against potential jurors solely on account of their race. *See id.*, 476 U.S. at 88–89, 106 S.Ct. at 1718–19. In order to make a prima facie showing of purposeful discrimination solely on evidence concerning the State's exercise of peremptory challenges of potential jurors, appellant must show first of all that he is a member of a cognizable racial group. Second, appellant must show that the State has exercised peremptory challenges to remove from the venire panel members of the defendant's race. Finally, appellant must show that these facts and any other relevant circumstances raise an inference that the State used its challenges to exclude potential jurors solely on account of their race. *See Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1723.

In determining whether the State's use of peremptory challenges raises an inference of purposeful discrimination, we find that the appellant has met two of the three *Batson* criteria. As a Hispanic, appellant is a member of a cognizable racial group. Second, the State exercised a peremptory challenge to remove Catalina Gonzalez, the only member of the defendant's race, from the panel.

Appellant fails, however, to meet the third prong of *Batson*, i.e., that these facts and other relevant circumstances raise an inference that the exclusion of Mrs. Gonzalez was on account of race. Mrs. Gonzalez's religious affiliation alone is sufficient to support the State's use of a peremptory challenge against her. *See Chambers v. State*, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Furthermore, the exclusion of the black veniremen, members of a different cognizable racial group, does not support appellant's claim of purposeful discrimination since "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of *his* race from the jury on account of race, ... or on the false assumption that members of *his* race as a group are not qualified to serve as jurors...."

*Batson*, 476 U.S. at 86, 106 S.Ct. at 1717 (emphasis ours). Although defendant is entitled to a jury *selected* from a pool of names representing a cross section of the community, he is not constitutionally entitled to a jury that mirrors the community. *See id.*, n. 6.

Having reviewed the record of the voir dire examination and the record of appellant's *Batson* hearing, we agree with the trial court that an inference of purposeful discrimination was not raised. Appellant's third point of error is overruled.

Appellant contends, in his fourth point of error, that the trial court erred in granting the State's challenge for cause of venireman Morris based on the following voir dire examination:

THE COURT: You feel like life in the penitentiary is too much?

VENIREMAN MORRIS: I feel that is excessive.

[PROSECUTOR]: All right. What do you base that on?

VENIREMAN MORRIS: Just a personal feeling.

[PROSECUTOR]: A personal feeling? Okay. Are you saying you would not be able to consider life in the penitentiary for someone that you convicted of the offense of aggravated robbery?

VENIREMAN MORRIS: I don't think so.

[PROSECUTOR]: All right. You don't believe so. You are the only one that knows.

Again, you don't have any facts to look at here, but are you saying you would not be able to consider that?

VENIREMAN MORRIS: I think that would be true.

[PROSECUTOR]: Your Honor, I would submit that he's not qualified to sit on the jury, having a bias against the upper range of punishment.

Appellant's attorney attempted to rehabilitate venireman Morris in the following manner:

[COUNSEL FOR APPELLANT]: Mr. Morris, I will ask you some questions in reference to this, because number one,

what the prosecutor is talking about is not necessarily what you can be able to give in this case or any other case, because you don't know the facts of this case.

He's been talking about the facts as to where there may not have been anybody hurt, or the fact that there may not have been any money taken. That is a lesser extreme of aggravated robbery.

On the other hand, there may be an aggravated robbery where people are injured, so you see the different ranges of punishment from the minimum to the maximum.

And all that is asked as to that is to see whether you would be able to consider that full range of punishment, not whether you can give it in this case. We don't know the facts of this case. Yet would you be able to consider the full range?

VENIREMAN MORRIS: Based on the information I have been given in the indictment, no, I couldn't.

[COUNSEL FOR APPELLANT]: On the information that I have given you or the information from Mr. Gill?

VENIREMAN MORRIS: The information that he read from the indictment. I—a threat to me does not constitute a life sentence.

[COUNSEL FOR APPELLANT]: Okay, sir.

. . . .

[COUNSEL FOR APPELLANT]: As— as I was speaking earlier, the indictment does read threats and use of a deadly weapon.

Now as I stated to you earlier, there are varying situations in between. And the prosecutor has been talking about the minimum type of situation of where there is nothing taken and there is no one injured. That is the minimum area of no one is hurt in any particular aggravated robbery.

You take then the other extremes. What he is asking you to do is to weigh the different extremes. On the other hand, to the other extreme, can you foresee a situation where that may have been

more that happened that would—that would be aggravated to the point where you could assess a life sentence?

VENIREMAN MORRIS: If there were additional facts.

[COUNSEL FOR APPELLANT]: If there were facts that would prove to you that effect?

VENIREMAN MORRIS: (Nods head affirmatively)

[COUNSEL FOR APPELLANT]: And of course, we cannot—it's very hard for you to make a determination right now as to what you would do you [sic] because you haven't heard any evidence. We haven't heard anything and therefore all that he's asking you, to be able to decide as to whether you would be able to consider the full range from one minimum to the extreme and from anywhere in between.

Do you think if you can do that?

VENIREMAN MORRIS: In—in my mind, a life sentence should apply only in cases where a severe bodily injury or loss of life.

[COUNSEL FOR APPELLANT]: Can you foresee a situation where in aggravated robbery that might happen?

VENIREMAN MORRIS: Yes.

[COUNSEL FOR APPELLANT]: And if in a situation where that might happen, could you perceive yourself setting life sentence?

VENIREMAN MORRIS: Yes.

[PROSECUTOR]: Your Honor, I am going to object to that line of questioning. That is not the allegation in this case. I submit that the issue has been settled.

[COUNSEL FOR APPELLANT]: Your Honor, the—the allegation is aggravated robbery. Whatever happens— or as to the facts—the facts are not known yet. And so the—the potential juror is being asked as to whether he could consider the full range of punishment in any given fact situation which might involve more than what is in the indictment. And more than—more than the actual threat and—and—because it is very possible that in any aggravated rob-

bery case, that there is going to be more than—than an actual threat, just as there is a possibility of there being only a threat.

THE COURT: All right. The Court has heard his responses and the challenge is sustained.

Proceed. Counsel.

[COUNSEL FOR APPELLANT]: Note our exception to that, Your Honor.

■ In *Holloway v. State,* 691 S.W.2d 608 (Tex.Crim.App.1984), the Court of Criminal Appeals held that, in the absence of a specific objection to a venireman's excusal, other than the comment, "[n]ote our exception to the record," no error is preserved for appellate review. *Id.* at 612. In the instant case, appellant made no specific objection to the dismissal of venireman Morris other than the statement, "[n]ote our exception to that, Your Honor." In his motion for rehearing, appellant claims that his discourse with the trial court immediately before the judge sustained the State's challenge of venireman Morris, constituted a proper objection. Actually, the passage referred to by appellant is his response to the State's objection to appellant's line of voir dire questioning. Appellant's response cannot be construed as a specific objection to a ruling not yet made by the trial court to the State's challenge for cause of venireman Morris. At no time did appellant specifically object to the excusal of venireman Morris other than stating, "[n]ote our exception to that, Your Honor." This comment is not sufficient to preserve error. *See id.*

■ Nevertheless, the trial court's excusal of venireman Morris was proper in light of his answers on voir dire. Venireman Morris ultimately stated in voir dire that, "[i]n—in my mind, a life sentence should apply only in cases where a severe bodily injury or loss of life." In an appropriate situation, i.e., where loss of life or severe bodily injury is incurred, venireman Morris affirmatively answered that he could consider imposing the maximum penalty. However, the venireman remained adamant that he could not consider the maximum

penalty where the defendant only threatened or exhibited a deadly weapon.

The indictment against appellant alleged:

Carlos Salazar hereinafter called Defendant, in the County of Tarrant, and State aforesaid, on or about the 23rd day of March 1985, did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place James Palmer in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm.

Appellant was charged under TEX.PENAL CODE ANN. sec. 29.03(a)(2). On voir dire, appellant questioned venireman Morris concerning whether he could impose a maximum penalty had appellant committed severe bodily injury or loss of life. Although this would also constitute aggravated robbery, it refers to a different offense under TEX.PENAL CODE ANN. sec. 29.03(a)(1). The fact that venireman Morris could consider the full range of punishment under section 29.03(a)(1) did not qualify him to serve in this case, which was brought under section 29.03(a)(2). The two parts of the statute have different elements and the State is entitled to have jurors who could consider the full punishment range for the offense for which the defendant is on trial, not one with different elements covered by a different statutory provision. Appellant's fourth point of error is overruled.

Appellant's fifth point of error challenges the constitutionality of TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4 (Vernon Supp.1987). Appellant contends that the trial court's instruction on parole pursuant to article 37.07 violates both the separation of powers doctrine and the due process of law clause in both the United States Constitution and the Texas Constitution. We reaffirm our earlier decisions holding article 37.07 constitutional under both clauses. *Spelling v. State,* 719 S.W.2d 404, 410 (Tex.App.—Fort Worth 1986, pet. granted); *Patton v. State,* 717 S.W.2d 772, 780 (Tex.App.—Fort Worth

1986, pet. granted). Point of error five is overruled.

■ Appellant's sixth point of error complains of the following argument by State during the punishment phase of the trial:

And you can be darn sure that when he gets out of the penitentiary, it's not going to be too much longer before he's back out on the streets with a gun in his hand and who knows where that gun is going to be next time?

MR. GONZALEZ: Your Honor, we object to that as being speculative.

THE COURT: Sustained.

. . . .

MR. GILL: And remember this thought: That when he gets out of prison he's going to realize that when he robs a store, that people do come up here and testify against him.

And ask yourselves what is going to become of those people that witness the case next time when he walks in there with a handgun, a deadly weapon. Ask yourselves that. Is he going to leave witnesses next time? I hope we don't have to answer that question, because I am submitting to you that the proper punishment in this case is going to be a punishment that keeps him off the streets for a great deal of time.

He's dangerous. He's a big man with that pistol in his hand. Again, he forfeited his rights. He brought himself here by the acts he committed in that Kroger Store.

Now when you think about how dangerous he is, think back to the facts of that Kroger Store. Think about how they must have planned it out. They picked that store when there was a lot of money there. They picked that store when there were few people there and when there were few employees there.

This man walked in the store and checked it out before they robbed it.

MR. GONZALEZ: Your Honor, we object to that as being speculative.

THE COURT: Overruled.

. . . .

MR. GILL: You heard the testimony that the weapon was leveled at Captain Collins. Think about how close we came in this case to someone being killed. And you know it's what is going to happen next time.

MR. GONZALEZ: We object to that as being speculative.

THE COURT: Overruled.

Appellant contends that this argument was improper in that the State was asking the jury to speculate on possible future crimes of appellant and consider them in reaching a decision.

We disagree. The argument made by State in this case is similar to arguments in other cases which have been upheld as a proper plea for law enforcement. In *Denison v. State*, 651 S.W.2d 754 (Tex.Crim. App.1983), the State argued that "I submit to you if you put him back on the street . . . you better go home and you better get a gun." *Id.* at 763. In *Ramirez v. State*, 692 S.W.2d 729 (Tex.App.—Waco 1985, no pet.), the prosecutor commented in closing argument that "[i]f after all [Appellant] did, you want to let that man go and turn him loose, you can just turn on the green light to his being able to do that to anybody in the state, if he wants to." *Id.* at 733. We hold that the argument in the instant case constitutes a proper plea for law enforcement and overrule appellant's sixth point of error.

■ In his seventh point of error, appellant contends error was committed by the trial court in admitting the following testimony by witness Tonie Barrons, a former employee of Kroger's:

Q. Ms. Barrons, I believe you testified that you worked somewhere other than Kroger now; is that correct?

A. Yes.

Q. Why did you leave Kroger?

MR. GONZALEZ: Your Honor, we would object as to the relevancy of that question.

THE COURT: It's overruled.

MR. GONZALEZ: Note our exception.

BY MR. HASE:

Q. When did you leave Kroger?

A. In May, around Memorial Day.

Q. Why did you leave Kroger?

A. Because they were working me nights still and I was still scared from the robbery.

Q. It was the robbery that made you not want to work nights?

A. Right.

Appellant cites no authority, nor can we find any, to support his claim that such evidence was inadmissible, inflammatory, and prejudicial. Even if an error was committed by the trial court in admitting this testimony, the reviewing court shall not reverse the judgment unless there is a reasonable possibility that the alleged error contributed to the conviction or affected the punishment assessed. *Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim.App. 1983); TEX.R.APP.P. 81(b)(2). Such an error is considered harmless if the minds of an average jury would not have found the State's case significantly less persuasive had the error not been committed. *Hawkins v. State*, 613 S.W.2d 720, 729–30 (Tex. Crim.App.1981). If an error was committed by the trial court in admitting this testimony, we hold that such error was harmless and overrule appellant's seventh point of error.

In his eighth point of error, appellant contends that the alleged prosecutorial misconduct, as complained of in his points of error two, three, six and seven, so permeated the proceedings as to deprive appellant of a fair trial. Since we have previously held in these points of error that there was no error as alleged by appellant, any error was not properly preserved for review, or the error was harmless, we overrule appellant's eighth point of error.

Affirmed.

## OPINION AND ORDER ON SECOND MOTION FOR REHEARING

Following our opinion on rehearing in this case, appellant filed a second motion for rehearing. We grant the motion in

part to consider only appellant's twelfth point.

The substance of appellant's twelfth point is that the trial court committed fundamental error at the punishment phase of the trial by charging the jury on the law of parole as required by TEX.CODE CRIM. PROC.ANN. art. 37.07 (Vernon 1981). Appellant correctly points out that article 37.-07 was held unconstitutonal in *Rose v. State*, No. 69,813, slip op. at TC–87–35–53 (Tex.Crim.App., November 12, 1987, reh'g pending) (not yet reported).[1] We disagree with appellant's contention that the case must be remanded to the trial court for a "harmless error" hearing. The record itself provides an adequate basis for determining the extent of harm caused by the instruction. Having reviewed the record, we find no harm to the appellant that requires reversal.

In *Rose*, a majority of the Court of Criminal Appeals held that article 37.07 violated both the separation of powers provision and the due course of law clauses of the Texas Constitution. Even though the statute was held unconstitutional, however, the conviction was affirmed because there was no showing of harm to the appellant. *See Rose*, at TC–87–35–67, n. 9. In making this assessment, the concurring opinions applied the two-tiered test of *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984) (opinion on reh'g).

In this case, there was no objection to the inclusion of the parole and good time instruction. The absence of an appropriate objection dictates the standard of review. Inasmuch as there was no objection, we look to determine whether the error was so egregious and created such harm that appellant has not received a fair trial—in short, "egregious harm." *See Almanza*, 686 S.W.2d at 171.

In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant

1. Although *Rose* is not yet final due to the pending motion for rehearing, we agree with its

rationale regarding the harm of such a jury instruction.

information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *See id.* at 174.

The record reflects that appellant was placed on deferred adjudication probation in a previous felony case. The offense for which he was tried in the instant case was, as shown by the evidence, committed five days after being placed on probation. During argument the State placed heavy emphasis on both these facts and asked for a long sentence. Neither the State nor the defense ever mentioned parole in their arguments. In spite of these arguments, the jury decided on a punishment of forty years confinement out of a possible maximum of ninety-nine years.

Based on this record, we cannot say that the instruction caused egregious harm under the *Rose/Almanza* standard. We therefore overrule appellant's twelfth point of error.

Appellant's second motion for rehearing is overruled.