Carlos **SALAZAR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 298–88.

Court of Criminal Appeals of Texas, En Banc.

June 13, 1990.

Rick Bowman (court appointed), Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall and Betty Stanton, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of aggravated robbery. V.T.C.A. Penal Code, § 29.03(a)(2). The jury also assessed appellant's punishment at forty years confinement in the Texas Department of Corrections.

The procedural history of this case is critical to the disposition of this petition, so a recitation of the pertinent facts is necessary. Appellant was convicted on January 9, 1986. Appellant filed a Motion for New Trial alleging, *inter alia,* he was denied a trial by a fair and impartial jury since the trial court denied his motion to quash the petit jury in which appellant alleged the State systematically struck all black and hispanic members of the panel. The motion for new trial was denied March 17,

1986, and appellant filed an appeal with the court of appeals raising eight points of error on September 26, 1986. The court of appeals overruled appellant's points of error and affirmed his conviction in an opinion on March 12, 1987.

Appellant thereafter filed his first motion for rehearing on March 30, 1987, raising six points of error. Tex.R.App.Proc. 100(a). In the one point of error pertinent to this petition, appellant contended the court of appeals erred in holding the trial court properly denied his motion to quash based on the State's use of peremptory strikes to exclude minorities from the venire. In his motion for rehearing appellant argued the court of appeals erred in finding his *Batson*[1] claim was waived because he did not lodge an objection on this basis prior to the jury being sworn. Appellant then filed an amended motion for rehearing urging the waiver issue was decided in his favor in *Henry v. State*, 729 S.W.2d 732 (Tex.Cr.App.1987). In its response, the State agreed the *Batson* error was preserved, and on June 30, 1987, the court of appeals withdrew its original opinion of March 12, 1987, and abated the appeal for a *Batson* hearing in the trial court.

The *Batson* hearing was held July 16, 1987, and findings of fact and conclusions of law were filed on August 21, 1987, and a supplemental transcript was filed. The State filed a motion for leave to file a post-submission brief which was granted by the court of appeals on September 15, 1987. In its brief, the State responded to appellant's original claim of purposeful dis-

crimination in the State's use of peremptory challenges and to the trial judge's conclusion that appellant failed to establish a prima facie case of discrimination under *Batson*. Appellant also then filed motion for leave to file a post-submission brief which was granted in part on September 16, 1987. In his brief, appellant raised eight points of error alleging error from the *Batson* hearing.[2] The court of appeals again affirmed appellant's conviction addressing two of the eight *Batson* points, holding in pertinent part that the trial court did not err in finding an inference of purposeful discrimination was not raised, and that the exclusion of veniremembers of a different cognizable racial group did not support appellant's claim of purposeful discrimination.[3] *Salazar v. State*, 745 S.W.2d 385 (Tex.App.—Fort Worth 1987). Appellant filed a second motion for rehearing raising fifteen points of error, ten of which dealt with alleged errors from the *Batson* hearing. The court of appeals granted this second motion for rehearing on one ground only, to wit: whether the trial court committed fundamental error in charging the jury on the parole law at punishment. See *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App. 1988) (Opinion on Rehearing). The conviction was again affirmed. See *Id.*

We granted appellant's petition for discretionary review to address nine grounds, numbers two through ten, he raises on *Batson* error. In grounds for review numbers two through six, appellant contends the court of appeals erred in failing to

---

**1.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**2.** The State then filed a second motion for leave to file a post-submission brief in order to address six *Batson* issues raised for the first time in appellant's post-submission reply brief. This motion was denied by the court of appeals.

**3.** The first six points raised by appellant but not addressed by the court of appeals are:
  (1) the trial court erred in holding the *Batson* hearing in the judge's library instead of in open court, over appellant's objection;
  (2) the trial court erred in refusing to allow appellant to cross-examine the prosecutor concerning his use of peremptory strikes to exclude minorities from the venire;

(3) the trial court erred in refusing to allow appellant to make a bill of exception concerning cross-examination of the prosecutor regarding his neutral explanations;
  (4) the trial court erred in not requiring the prosecutor to produce his jury questionnaire forms for introduction into evidence;
  (5) the trial court erred in not ordering the prosecutor to seal the jury questionnaire forms for submission to the court of appeals; and
  (6) the actions of the trial judge deprived appellant of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

*address* his alleged procedural errors in the conduct of the *Batson* hearing by the trial court. In his seventh ground for review, appellant contends the court of appeals erred in failing to hold, because it did not address the issue, that the trial judge's actions during the *Batson* proceeding denied him the effective assistance of counsel. Grounds for review eight, nine, and ten, which present issues addressed by the appellate court, are interrelated and allege respectively that the court of appeals erred in holding appellant failed to establish a prima facie case of racial discrimination by the prosecutor's use of peremptory strikes; that the court erred in failing to hold the prosecutor's use of a peremptory strike to exclude a venireperson of appellant's race is *Batson* error; and that the court erred in failing to hold the prosecutor's use of peremptory strikes against the minority members of the venire constituted *Batson* error.

At the *Batson* hearing, defense counsel initially objected to the hearing being held in the trial judge's library as opposed to the courtroom. The trial judge overruled the objection finding merit in the State's claim that "the hearing should be held behind closed doors in order to preserve the sanctity of our work product." Appellant and the State stipulated that appellant is Hispanic, that four minority venirepersons, one hispanic and three blacks, were peremptorily struck from the panel, and that he was tried by an all white jury. Appellant then asserted he had established a prima facie case of discrimination, to which the State objected that the exclusion of persons of a different race than the defendant was inapplicable in *Batson*. The hearing proceeded with the trial judge assuming appellant had established a prima facie

case of discrimination and affording the State an opportunity to respond.

■ Robert Gill, the lead prosecutor in this cause, then testified he and Donald Hase were responsible for the peremptory strikes in this case. The State used all ten of its peremptory challenges, striking the four minority venirepersons in question and six white venirepersons. Gill testified extensively as to the general procedure he follows during voir dire and when making his peremptory strikes. As to prospective juror Gonzalez, the subject of the *Batson* hearing in the State's view since she was the only Hispanic veniremember, Gill noted on his juror information form that she was Hispanic, while Hase noted she was white. Gill testified Gonzalez was struck for two reasons, to wit: she had the same last name as the defense lawyer and she was a Seventh Day Adventist with a Master of Divinity degree. Gill did not know if Gonzalez was related to defense counsel[4], but felt she might favor defense counsel's position over his because of that similarity. Gill also felt that Gonzalez would be weak on punishment and favor rehabilitation because of her advanced degree in religion.[5] Appellant's attorney requested the opportunity to cross-examine Gill, but the trial judge denied the request since he believed the hearing was not to be "a full blown adversary type proceeding."[6] Appellant's attorney was allowed to make a bill of exception but not by cross-examination, thus no bill was made. Appellant's attorney also requested the juror questionnaires with the State's notes be included in the record. The State objected to this request claiming that put its work product into evidence. The trial judge agreed to seal the juror questionnaires and transmit them with the record if he could obtain them from the court reporter. Appellant's coun-

---

4. Our review of the voir dire reveals, however, that Gill asked the jury panel in his general voir dire whether anyone knew or had dealt with appellant's trial attorney, Alex Gonzalez.

5. Gill also testified to his reasoning for striking the three black venirepersons, but we do not detail that testimony at this point. See discussion of ground for review number ten *infra* at p. 193–194.

6. Both the State and the trial judge interpreted *Henry,* 729 S.W.2d 732, *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr.App.1987), and *DeBlanc v. State,* 732 S.W.2d 640 (Tex.Cr.App.1987), as merely requiring the State to come forward with neutral explanations for its peremptory challenges. Cf. *Keeton v. State,* 749 S.W.2d 861, 871, n. 1 (Tex.Cr.App.1988) (opinion after abatement), (Teague, J. concurring).

sel then requested the State present their questionnaire forms for copying and placement into the record in the event that the court reporter could not find her copy of the questionnaires. The State again lodged a work product objection and asked that appellant's attorney include in the record his juror information forms. It was established, however, that appellant's attorney at this hearing was not also trial counsel, and he therefore did not have a copy of the juror information forms. The court again stated he would transmit these forms with the record "if we have them". The hearing then concluded. From reviewing the record, we find the juror questionnaire forms are not included in the supplemental transcript submitted after the hearing.

In the trial judge's findings and conclusions, he stated, after reviewing the evidence offered at the *Batson* hearing and the objection at trial[7], appellant failed to establish a prima facie case of discrimination. In the event the trial court was in error as to that finding, the trial judge went on to address the rebuttal evidence presented by the State and concluded the record did not demonstrate purposeful discrimination in the jury selection process. In its post-submission brief, the State agreed with the trial court that appellant had not established a prima facie case of discrimination, but if the appellate court should find otherwise, the State contended it met its obligation to come forward with neutral explanations for use of peremptory strikes against the four minority veniremembers.

The court of appeals affirmed the trial court's conclusion that appellant failed to raise an inference of purposeful discrimination. The court of appeals held that appellant failed to meet the three *Batson* criteria for raising an inference of purposeful discrimination. Specifically, the appellate

court determined, one, that appellant, as a Hispanic, was a member of a cognizable racial group, and, two, that the State exercised a peremptory challenge to remove Gonzalez, the only member of appellant's race, from the panel, but that, three, appellant failed to show that these facts and other relevant circumstances raise an inference that the exclusion of Gonzalez was on account of race. *Salazar*, 745 S.W.2d at 389. The court of appeals held Gonzalez's religious affiliation alone was sufficient to support the State's peremptory challenge. *Id.*, citing *Chambers v. State*, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

In his eighth ground for review, appellant contends the court of appeals erred in holding he failed to establish a prima facie case of racial discrimination in the prosecutor's use of peremptory challenges. In *Dewberry v. State*, 776 S.W.2d 589, at fn. 2 (1989), we stated that the "question of whether a defendant has established a prima facie case is normally not a concern subject to appellate review." Utilizing a discussion of the factual inquiry in Title VII cases, we quoted *United States Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), which stated:

'[The prima facie case method] is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' [citation omitted] *Where the defendant has done every thing that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.* The district court has before it all the evidence it needs to decide whether 'the defendant

---

7. After voir dire examination and the impaneling of the jury, appellant presented his motion to quash the jury that he claimed was selected based on a Tarrant County policy of systematic exclusion of minorities. See *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Specifically, appellant pointed to the exclusion of one hispanic and three black venirepersons. Appellant presented argument sup-

porting his contention of purposeful discrimination and then called the prosecutor to the witness stand to testify as to his reasoning for striking these prospective jurors. Appellant's trial attorney also entered into evidence copies of the juror information sheets on only the four minorities who were peremptorily challenged. The motion was obviously overruled.

intentionally discriminated against the plaintiff.' [citation omitted].
*Dewberry*, 776 S.W.2d at 591, fn. 2 (emphasis in original). Analogizing the factual inquiry from Title VII cases to the issue in this cause, the "defendant" discussed in the immediately preceding quote is the State, while the "plaintiff" is the criminal defendant. Thus, we proceed to review the record presented to us and the procedure followed in the *Batson* hearing [8], to determine whether the State did all that was required of it. If not, the question of whether appellant established a prima facie case of discrimination is not irrelevant, and will therefore be subjected to our review.

As noted earlier, at the *Batson* hearing, which was held in the trial judge's library, the State and appellant stipulated that appellant was Hispanic, that one Hispanic and three Black venirepersons were peremptorily struck by the State, and that appellant was tried by an all-white jury. Appellant asserted these facts established a prima facie case of discrimination. Without ruling on the issue, the trial judge proceeded with the hearing on the assumption appellant had in fact established a prima facie case of discrimination, and he afforded the State an opportunity to respond in rebuttal. The prosecutor then presented his explanations for striking the four minority venirepersons, asserting that neither race nor ethnicity was a factor in the State's use of its ten peremptory challenges.

Appellant's counsel then expressed his desire to ask questions of the prosecutor, which request the trial judge denied since he believed cross-examination was not a part of the *Batson* hearing.[9] Counsel objected to not being able to cross-examine the prosecutor Gill and requested to make a bill of exception on that. The trial judge would allow counsel to make a bill, but "not by cross-examination" as he request-

ed. Appellant's counsel then requested that the juror information forms with the State's notes on them be admitted into evidence, to which the State objected they were work product. The judge stated he would obtain a copy of these forms from the court reporter, if possible, and seal them as part of the record since "[t]hey are not a part of the official transcript." The hearing concluded with appellant requesting findings of fact and conclusions of law from the trial judge on each minority venireperson, the pertinent portions of which we have summarized at pp. 190–191 *infra*.

In grounds for review numbers two through five, appellant complains of the court of appeals' failure to hold the trial court committed reversible error in his conduct of the *Batson* hearing. We agree with his contentions and address them seriatim. First, the trial judge conducted the hearing in his library, over appellant's objection, rather than in open court. This procedure was in contravention of Art. 1.24, V.A.C.C.P., which requires "[t]he proceedings and trials in all courts shall be public." Also, the trial judge refused to allow appellant's attorney to cross-examine the prosecutor following his offer of neutral explanations for the peremptory challenges. Cross-examination is necessary in a *Batson* hearing because once the State has met its burden of coming forward with neutral explanations for its peremptory strikes [10], the burden to show purposeful discrimination shifts back to the defendant to impeach or refute the neutral explanation or show that it is merely a pretext. See *Newsome v. State*, 771 S.W.2d 620 (Tex.App.—Dallas 1989, PDR refused), citing *Williams v. State*, 767 S.W.2d 872 (Tex.App.—Dallas 1989, no pet.), which held *Batson* movant has right to question

---

**8.** Appellant's second, third, fourth, and fifth grounds for review encompass alleged errors in the procedure of the *Batson* hearing, which we address *infra*. The court of appeals failed to address these issues which were raised in appellant's post-submission brief.

**9.** One of the prosecutors at the hearing also expressed her belief that the cases coming from

this Court did not evidence any contemplation of cross-examination at *Batson* hearings.

**10.** This burden does not shift to the State unless and until the defendant has made a prima facie case of discrimination. *Keeton*, 724 S.W.2d at 65.

prosecutor concerning his racially neutral reasons for striking minority venirepersons. Moreover, after the trial court refused to allow cross-examination of the prosecutor, the trial judge refused to allow appellant's counsel to make a bill of exception through cross-examination of the prosecutor. The right to make an offer of proof or perfect a bill of exception is absolute. *Spence v. State*, 758 S.W.2d 597 (Tex.Cr.App.1988), and cases cited therein; Tex.R.App.Proc. 52(a). And finally, appellant asserts error since the juror information forms with the prosecution's notes were not produced for introduction into evidence. The record from the *Batson* hearing reflects prosecutor Gill refreshed his memory on the reasons for his peremptory strikes by reviewing his notes before the hearing. Appellant contends production of the notes is proper under Tex.R. Crim.Evid. 611 and is necessary so that he can make a comparison analysis of the prosecution's peremptory strikes.[11] We agree with appellant that the production of the State's juror information notes was both necessary and proper in this cause. On the basis of the above discussion, we conclude the trial judge improperly conducted the *Batson* hearing, and the court of appeals erred in failing to address these issues. Consequently, we sustain appellant's grounds for review, numbers two through five.[12]

Additionally, from this discussion of the procedural errors in the *Batson* hearing, we determine the State has not "done everything that would be required of [it] if the [defendant] had properly made out a prima facie case". *Dewberry*, 776 S.W.2d at 591, fn. 2. Thus, whether appellant has established a prima facie case of discrimi-

nation is not irrelevant, and is subject to our review.

■■■ On the basis of the evidence from the *Batson* hearing, we hold appellant has established a prima facie case of discrimination. To establish a prima facie case, a defendant must merely show[13]: (1) he is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race (relying on the principle that peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and (3) these facts and any other relevant circumstances raise an inference the prosecutor used the peremptory challenges to exclude the veniremembers on account of their race. *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987). The stipulation from the *Batson* hearing alone is sufficient to establish a prima facie case. The stipulated facts show the State peremptorily struck the only venireperson who was of the same race as appellant. While this is not a large number of Hispanics which were struck from the panel, it is significant since this evidence shows that the State peremptorily struck 100% of the venirepersons who were of the same race as appellant. This showing is sufficient to establish a prima facie case. See *Dewberry*, 776 S.W.2d at 591, citing *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), and *Keeton v. State*, 749 S.W.2d 861, 867 (Tex.Cr.App.1988), (prosecutor's use of peremptory challenges to exclude five of six blacks from venire established prima facie case). The court of appeals erred in holding otherwise, and we

---

**11.** In footnote 6A in *Tompkins v. State*, 774 S.W.2d 195 (Tex.Cr.App.1987), Judge Teague, writing for the majority, discusses the use of comparison analysis by a defendant in impeaching or rebutting the State's neutral explanations for its peremptory challenges. This issue is currently under review by this Court. See *Vargas v. State*, 781 S.W.2d 356 (Tex.App.—Houston [1st] 1989), PDR granted.

**12.** Appellant's sixth ground for review is rendered largely moot by our disposition of his fifth ground. Appellant contends, in this sixth ground, the court of appeals erred in failing to

hold that the trial court committed reversible error in failing to require the prosecutor to produce his juror questionnaire forms in sealed form for submission to the appellate court. Given that we held in disposition of the fifth ground that production of the juror information forms was proper, the issue raised in this sixth ground is thereby resolved.

**13.** As we recognized in *Dewberry*, 776 S.W.2d at 591, the initial burden in establishing a prima facie case of discrimination is not onerous.

sustain appellant's eighth ground for review.[14]

Accordingly, we reverse the judgment of the court of appeals and remand this cause to the trial court for a proper *Batson* hearing. The trial judge is to again enter findings of fact and conclusions of law from the hearing.

CLINTON and BERCHELMANN, JJ., concur in the result.

McCORMICK, Presiding Judge, dissenting.

I dissent. The majority avoids deciding the *Batson* issue in this case by needlessly focusing on proper labeling of procedural issues.

The trial court issued conclusions of law that stated in part:

"Reviewing the challenges as a unit and all other relevant facts and circumstances, the court concludes that the record does not demonstrate purposeful discrimination in the jury selection."

Coupled with this conclusion of law the record also reflects that a full cross examination of the State's prosecutor occurred in a defense motion to quash the jury based on the systematic exclusion of minorities from jury service in Tarrant County. The majority chooses to ignore the cross examination of the State's prosecutor which answers the *Batson* issue that is before us.[1] The State's prosecutor was specifically asked why he struck the only Hispanic on the panel. Defense counsel questioned the prosecutor as follows:

"Q. Refer to juror number 16, Catalina Rodriguez Gonzalez, the fact that she has got a Bachelors of Music, Seventh Day Adventist, medical secretary at the present time, would that not qualify her to be a good State's juror?

"A. No, I wouldn't think so, not with a Masters of Divinity. That—might indicate somebody who would possibly be weak on punishment."

In addition to this testimony counsel for the defense argued that the State had questioned venireperson Gonzalez in a superficial manner.

The majority now chooses to ignore this testimony because it occurred at the hearing on the motion to quash the jury panel. In other words, the cross examination was improperly labeled. The majority offers no explanation why this testimony does not satisfy the substantive requirements of *Batson*. In *United States v. Forbes*, 816 F.2d 1006 (5th Cir.1987), the proper role of a reviewing court was explained.

"Taking our cue from *Batson's* repeated analogies to Title VII jurisprudence, 106 S.Ct. 1721 n. 18, 1722 n. 19, 1724 n. 21, we hold that when the prosecution's explanation is of record, we will review only the district court's finding of discrimination *vel non*. Cf., e.g., *U.S. Postal Service Bd. of Gov. v. Aikens*, 460

---

**14.** We have not addressed appellant's seventh ground for review because we find the issue is moot. In this ground, appellant contends the court of appeals erred in failing to hold that the actions of the trial court at the *Batson* hearing denied him the effective assistance of counsel. Since we held the trial judge improperly conducted the *Batson* hearing and remand this cause for further proceedings, appellant's complaints will be remedied, and the issue of effective assistance of counsel at the hearing is moot. We have also not addressed appellant's ninth ground for review wherein he contends the court of appeals erred in failing to hold the prosecutor's use of a peremptory challenge to strike the Hispanic veniremember constituted *Batson* error. On the state of the record before us, such a determination would be premature. Thus, this ground for review is overruled.

We also do not address the merits of appellant's tenth ground for review. In this ground,

appellant argues the court of appeals erred in failing to hold that the prosecutor's use of peremptory challenges against the Black and Hispanic members of the venire constituted *Batson* error. Since appellant originally raised a *Batson* complaint as to the State's striking of these three Black veniremembers, and since we remand this cause for a *Batson* hearing, we anticipate appellant's objections to the State's use of these strikes will be more fully developed at the hearing. See concurring and dissenting opinions in *Holland v. Illinois*, — U.S. —, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Our decision to review this ground at this time was improvident, and we therefore dismiss appellant's tenth ground for review as improvidently granted.

**1.** The cross examination in question is relegated to a footnote in the majority opinion. *Salazar v. State*, 795 S.W.2d 187 (Tex.Cr.App.1990).

U.S. 711, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Merrill v. Southern Methodist University,* 806 F.2d 600, 605 n. 6 (5th Cir.1986) (noting in Title VII context that " 'by the time a full-tried case reaches us on appeal, the parties' showing at the preliminary levels of the framework is irrelevant.... We need address only the propriety of the ultimate finding of discrimination *vel non.*' " (quoting *EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 972 (5th Cir.1984)." *Forbes,* 816 F.2d at 1010.

This Court has before it all the facts necessary to decide whether intentional discrimination has occurred. Because the cross-examination of the State's prosecutor occurred at the time of the alleged violation, the best testimony as to whether discrimination occurred during voir dire is before us. The majority's opinion does absolutely nothing to further the aims of *Batson* and ignores the proper role of an appellate court in reviewing questions of intentional discrimination in jury selection.

I also add that members of the majority have shown a propensity to castigate the State for preparing for a *Batson* hearing. See *Whitsey v. State,* 796 S.W.2d 707, 716 (Tex.Cr.App.1989, original submission). I can find no support in caselaw that a party's preparation for a hearing diminishes their credibility. Since the majority is insisting on a remand then I flatly reject any contention that the parties to a *Batson* hearing should have their credibility impugned based on a professional responsibility to represent their clients to the best of their ability.

WHITE, J., joins this dissent.