11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Arthur Puente, Jr.

Appellant

Vs.                   No. 11-02-00331-CR -- Appeal
from Dallas County

State of Texas

Appellee

 

The jury
convicted Arthur Puente, Jr. of the offense of aggravated sexual assault of a
child.  Upon finding that appellant had
previously been convicted of the felony of aggravated rape, the trial court
assessed appellant=s
punishment at confinement for life as mandated by TEX. PENAL CODE ANN. ' 12.42(c)(2) (Vernon 2003).  We affirm. 


Appellant
presents two issues on appeal but does not challenge the sufficiency of the
evidence.  The record shows that
appellant abducted the 14-year-old victim, took her to an isolated area,
threatened to kill her, and forcibly strangled and sexually assaulted her.  








In the
first issue, he complains of a Batson[1]
error and of the trial court=s refusal to allow defense counsel to examine the prosecutor=s voir dire notes.  The use of peremptory challenges to strike potential jurors on
the basis of race is prohibited.  Batson
v. Kentucky, supra; TEX. CODE CRIM. PRO. ANN. art. 35.261 (Vernon 1989).  In Purkett v. Elem, 514 U.S. 765 (1995), the
Supreme Court delineated the three-step process for properly determining a Batson challenge. 
First, the opponent of a peremptory challenge must make out a prima
facie case of racial discrimination, essentially a burden of production.  In the second step, the burden of production
shifts to the proponent of the strike to respond with a race-neutral
explanation.  Third, if a race-neutral
explanation has been proffered, the trial court must decide whether the
opponent of the strike has proved purposeful racial discrimination.  The burden of persuasion is on the opponent
of the strike to convince the trial court that the strike was racially
motivated.  Purkett v. Elem, supra; Ford
v. State, 1 S.W.3d 691, 693 (Tex.Cr.App.1999); Camacho v. State, 864 S.W.2d
524, 529 (Tex.Cr.App.1993), cert. den=d, 510 U.S. 1215 (1994).  

The record
shows that appellant objected because the State used five of its ten peremptory
strikes on black veniremembers. 
Veniremembers Nos. 9, 18, 21, 25, and 40 were struck by the State.  The State responded that there were other AAfrican American@ veniremembers whom the State did not
strike.  The State also gave
race-neutral reasons for its strikes. 
Veniremember No. 9 was struck Abased on her answers during [the] questioning about Fifth Amendment.@  The
prosecutor did not Aget a
good feel based on her answers that she was responding to [the prosecutor]
truthfully and openly.@  The prosecutor originally stated that
Veniremembers Nos. 18, 21, 25, and 40 were struck because they had no
children.  The prosecutor subsequently
stated that Veniremember No. 25 was struck because Ashe had family members charged with child
abuse.@  The
record from the voir dire proceedings showed that Veniremember No. 25 had a
cousin charged with a Asimilar
offense to [appellant].@  The prosecutor pointed out
that he also struck Veniremember No. 24, who was white, because Veniremember
No. 24 had no children.  We hold that
the State=s explanations were both reasonable and
racially neutral. 

In
response to the State=s
explanations, defense counsel pointed out that Veniremember No. 25 had children
and that Veniremember No. 40 may or may not have had children and Acould probably be read either way@ because that blank was not filled in on the
jury questionnaire.  Defense counsel
also stated that the State had not struck a white venireman whose family member
had been convicted of an offense against a child.  However, the prosecutor responded that the charge in that case
was not sexually oriented but, rather, was child endangerment.  The record from voir dire supports the
prosecutor=s remarks. 
Appellant did not show that the State=s race-neutral reasons for its strikes were a pretext for
discrimination.  We hold that the trial
court=s determination on the Batson issue
was not clearly erroneous.  See
Chamberlain v. State, 998 S.W.2d 230, 236 (Tex.Cr.App.1999), cert. den’d,
528 U.S. 1082 (2000); Adanandus v. State, 866 S.W.2d 210, 224-25
(Tex.Cr.App.1993), cert. den’d, 510 U.S. 1215 (1994).  








Appellant
also contends in his first issue that the trial court erred by denying
appellant’s request to review the prosecutor’s notes from voir dire.  A prosecutor may be required to turn over
notes made during voir dire if those notes were used to refresh the prosecutor’s
memory before or while testifying with respect to a Batson
challenge.  Pondexter v. State, 942
S.W.2d 577, 582 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 825 (1997);
Salazar v. State, 795 S.W.2d 187, 193 (Tex.Cr.App.1990).  The record shows that, the morning after the
jury had been sworn, appellant asked the trial court to reopen the Batson
hearing.  Appellant then moved to
examine the notes that the prosecutor made during voir dire and may have relied
upon to exercise her peremptory challenges. 
There is no indication in the record that the prosecutor used her notes
to refresh her memory before or during her testimony at the Batson
hearing.  See Pondexter v. State,
supra.  Moreover, appellant’s request
appears to be untimely in this case because appellant did not request such
notes until after the jury had been sworn. 
We hold that the trial court did not err by failing to require the
prosecutor to turn over her notes. 
Appellant’s first issue is overruled. 


In the second issue, appellant argues that the trial
court erred in failing to grant his motion to quash the jury panel.  Appellant timely filed the motion to quash,
but the hearing on the motion was postponed by agreement and was heard after
trial.   In the motion, appellant
contended that the method of choosing and summoning jury panels in Dallas
County is clearly discriminatory and that Hispanics are disproportionately
underrepresented as jurors.  

The
Supreme Court set out the following standard:

In order
to establish a prima facie violation of the fair-cross-section requirement, the
defendant must show (1) that the group alleged to be excluded is a Adistinctive@ group in the community; (2) that the representation of this group in
venires from which juries are selected is not fair and reasonable in relation
to the number of such persons in the community; and (3) that this
underrepresentation is due to systematic exclusion of the group in the
jury-selection process. 

 

Duren v. Missouri, 439
U.S. 357, 364 (1979).  

Testimony
of the jury services manager for Dallas County from a similar hearing in a
different case was introduced as an exhibit at the hearing.  According to the jury services manager, the
Secretary of State creates Dallas County=s jury wheel from the list of Dallas County residents that are either
registered to vote or have a Texas driver=s license or identification card. 
Names of prospective jurors are randomly pulled off the jury wheel, and
those people are sent a summons. 
Generally, however, only about 20 percent of those summoned actually
report for jury service.  








Appellant
also introduced into evidence a study of Dallas County juries.  The study reported that about 25 percent of
Dallas County residents are Hispanic. 
According to the study, the group of people sent a jury summons Aclosely resembled the adult population of
Dallas County.@  The
study showed, however, that only 7 percent of those reporting for jury service
were Hispanic. 

We hold
that appellant failed to meet the third prong of the Duren test.  Unlike the defendant in Duren,
appellant did not show that the underrepresentation of Hispanics in jury pools Awas systematic--that is, inherent in the
particular jury-selection process utilized.@ Duren v. Missouri, supra at 366. 
In Duren, the defendant showed that women were underrepresented
in jury pools in large part because of an automatic exemption that was
authorized by statute.  In this case,
appellant merely showed that a disproportionate number of Hispanics failed to
report for jury service.  Some of the
people who failed to report for jury service were contacted and were asked to
answer a survey.  Only 41 of those
polled were Hispanic, and they gave a variety of answers in response to a
question regarding the reason they failed to report.  Appellant failed to show that the underrepresentation was caused
by a systematic exclusion of Hispanics in the jury-selection process.  See Hernandez v. State, 24 S.W.3d 846,
849-51 (Tex.App. - El Paso 2000, pet=n ref=d). 
Appellant=s second issue is overruled.  

The
judgment of the trial court is affirmed. 


 

JIM
R. WRIGHT

JUSTICE


 

August 7, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b). 

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J. 











[1]Batson v. Kentucky, 476 U.S. 79 (1986).