Ricky L. GANDY, Appellant

v.

The STATE of Texas, Appellee.

No. 14–05–00536–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 1, 2007.

---

Bob Wicoff, Houston, for Appellant.

Roger A. Haseman, Houston, for State.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Ricky L. Gandy, was charged by indictment with illegal dumping.[1] The indictment also contained an enhancement paragraph alleging a previous conviction for illegal dumping. The cause proceeded to trial before a jury. After considering the evidence presented, the jury found the appellant guilty of the offense charged. Thereafter, appellant entered a plea of "true" to the enhancement allegations, and the jury subsequently assessed appellant's punishment at a probated sentence of five years and a fine of $10,000. In three points of error, appellant contends the trial court submitted two erroneous instructions to the jury and abused its discretion in excluding certain evidence favorable to him. We affirm.

The record reflects that appellant owned and operated a business known as Old Orchard Trucking and Waste Systems. Responding to a complaint regarding an offensive odor emanating from the business, George Kennard, a pollution investigator with Harris County Pollution Control, went to the site on March 8, 2004, at which time he observed a mound of approximately 3,000 cubic yards of trash and garbage. On March 12, 2004, a citation was issued to appellant informing him that he was in non-compliance with the Solid Waste Disposal Act. Appellant was also instructed to remove and properly dispose of the trash.

On April 6, 2004, appellant and his attorney met with Kennard to discuss the legality of his business. Because the trash had not been separated into specific components, i.e., glass, plastic, metal, paper, etc., but was commingled with putrescible garbage, Kennard advised appellant he was operating a solid waste facility for which he did not have a permit. Kennard again instructed appellant to remove the garbage to a properly permitted landfill.

After receiving additional complaints, Kennard visited Old Orchard Trucking and

---

1. See TEX. HEALTH & SAFETY CODE ANN. § 365.012 (Vernon 2001).

Waste Systems on April 23, 2004. Kennard again observed a large pile of mixed commingled solid waste. He repeated his admonition to appellant that he was operating an unauthorized solid waste facility.

Kennard testified that on May 5, 2004, he returned to the site at appellant's invitation. Kennard observed a person pulling recyclable material from the pile of garbage. Another citation was issued, however, on May 7, 2004. Two follow up investigations were conducted on May 13, 2004, and May 18, 2004. As a result, two additional citations were issued on May 25, 2004.

Responding to yet another complaint regarding noxious odors, Kennard went to the site of the business on June 14, 2004, and observed approximately 4,500 cubic yards of garbage piled on the property. The unsorted mixture contained plastic, paper, mattresses, wood, bagged trash, creosoted timbers, garbage and other waste. Appellant insisted that he was operating a recycling facility. However, Kennard once again advised appellant that he was, in reality, operating an illegal solid waste facility. Kennard issued a citation to appellant and instructed him to move the garbage to a proper landfill.

The pile of trash and garbage on the site of Old Orchard Trucking and Waste Systems continued to increase, eventually constituting approximately 7,000 cubic yards of waste. On June 25, 2004, the grand jury returned an indictment against appellant for illegal dumping.

In his first point of error, appellant contends the trial court erred in submitting separate offenses to the jury in the disjunctive while asking only for a general verdict thereby permitting the possibility of a non-unanimous verdict. The indictment contains what appear to be three paragraphs alleging that appellant did: (1) "**transport** litter or other solid waste ...

to a place that was not an approved solid waste site for disposal"; (2) "**dispose,** allow, or permit the disposal of litter and other solid waste ... at a place that was not an approved solid waste site"; and (3) "**receive** litter or other solid waste ... at a place that was not an approved solid waste site." (Emphasis added). In its charge to the jury, the trial court closely tracked the allegations of the indictment setting forth the charges in disjunctive paragraphs. Thus, when the jury returned a general verdict of guilty, it was possible that some portion of the jury believed appellant was guilty of unlawfully "transporting" solid waste while others believed he was guilty only of unlawfully "disposing" or "receiving" solid waste.

Appellant did not object to the charge, but he contends the improper charge resulted in "egregious" harm and, thus, no objection was required to preserve reversible error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (holding that when no proper objection was made at trial, the conviction will be reversed only if the charge error is so egregious that defendant did not have a fair and impartial trial). For its part, the State concedes error, but contends we need not reverse the conviction because appellant was not "egregiously" harmed.

■■■ It is proper for the State to plead alternative "manner or means" in the conjunctive when proof of any one "manner or means" will support a guilty verdict. *Johnson v. State,* 187 S.W.3d 591, 604 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). In other words, a single indictment may present allegations of different methods of committing the charged offense in the conjunctive and the jury may be charged in the disjunctive. *Carty v. State,* 178 S.W.3d 297, 301–02 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). Thus, an in-

dictment may allege different manners or means of committing a single offense, and the jurors are not required to agree upon a single manner or means. *Marinos v. State*, 186 S.W.3d 167, 175 (Tex.App.-Austin 2006, pet. filed).[2] Accordingly, the first step in a unanimity challenge is to examine the language of the statute in order to determine whether the legislature intended to create multiple, separate offenses, or a single offense capable of being committed in several different ways. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006).

■ It is common form for the legislature to define an offense with the preparatory phrase "a person commits an offense if. . . ." Thereafter, criminal statutes typically set forth various manner and means of committing the offense. For example, murder is defined by Section 19.02(b) of the Penal Code which provides:

(b) *A person commits an offense if* he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003) (emphasis added). Although the conduct is distinctly different, the three methods of committing murder set forth in the statute are different manner and means of committing the same offense, not distinct and separate offenses. *See Aguirre v. State*, 732 S.W.2d 320, 325–26 (Tex.Crim. App.1982) (holding that where indictment contained two paragraphs, the first alleging murder under § 19.02(b)(1) and the second alleging murder under § 19.02(b)(3), the allegations were merely two different manner and means of committing the same offense).

■ Here, the legislature has chosen to define the offense of "illegal dumping" in a single statute. This constitutes some indication that the legislature intended the various forms of illegal dumping to be several manner and means of committing one offense. *Cf. Vick v. State*, 991 S.W.2d 830, 832 (Tex.Crim.App.1999) (holding that where legislature has separately defined offenses in different statutes, it may be inferred that the legislature sought to define separate and distinct offenses). However, in stark contrast with the murder statute, the "illegal dumping" statute contains three separate allegations of "a person commits an offense if. . . ." TEX. HEALTH & SAFETY CODE ANN. § 365.012(a), (b), and (c).[3] We believe the repeated use

---

2. *See also Martinez v. State*, 129 S.W.3d 101, 106 (Tex.Crim.App.2004) (holding that when the charge authorizes the jury to convict on more than one theory, a guilty verdict will be upheld if the evidence is sufficient on any one of the theories); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App.2003) (same).

3. The statute provides, in pertinent part:

(1) *A person commits an offense if* the person disposes or allows or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site, including a place on or within 300 feet of a public highway, on a right-of-way, on other public or private property, or into inland or coastal water of the state.

(b) *A person commits an offense if* the person receives litter or other solid waste for disposal at a place that is not an approved solid waste site, regardless of whether the litter or other solid waste or the land on which the litter or other solid waste is disposed is owned or controlled by the person.

of this phrase signals an intention to define separate offenses, not simply to list the various manners and means of committing the offense of "illegal dumping."

Moreover, the Texas Court of Criminal Appeals has been progressively moving in the direction of interpreting statutory language in terms of "more offenses" and less in terms of "manner and means." For example, in *Vick*, 991 S.W.2d at 833–34, the court held the legislature intended the many varied forms of aggravated sexual assault set forth in Section 22.021 of the Penal Code to be separate and distinct offenses, not various manner and means of committing the same offense.[4]

Likewise in *Ngo v. State*, 175 S.W.3d 738, 747–48 (Tex.Crim.App.2005), the Court of Criminal Appeals found that each description of credit card abuse in Section 32.31 of the Penal Code represents a distinct offense. *See* Tex. Penal Code Ann. § 32.31 (Vernon 2003). Thus, there are now eleven distinct offenses of credit card abuse set forth in a single statute.[5]

Accordingly, we find the allegations contained in the indictment presented here are separate counts (though not labeled as such) charging appellant with three distinct offenses. Because the jury returned a general verdict, it is possible the jury did not return a unanimous verdict as to any specific offense. Moreover, it is impossible

to know for which offense he was convicted.

Charge error that permits a jury to reach a non-unanimous verdict is "constitutional" error. *Ngo*, 175 S.W.3d at 752. A constitutionally deficient jury charge, however, does not result in automatic reversal of a conviction. *Ex parte Smith*, 185 S.W.3d 455, 467 (Tex.Crim. App.2006). We must also assess the harm that this deficient jury charge caused the defendant. *Id.* Whether sufficient harm resulted from the charging error to require reversal depends upon whether the defendant specifically objected to the error at trial. *Id.* Under *Almanza*,[6] when there has been a timely objection made at trial, we look only for "some harm." *Id.* By contrast, where the error is urged for the first time on appeal, we look for "egregious harm." *Id.*

To support his contention that he was egregiously harmed appellant relies heavily on the Court of Criminal Appeals decision in *Ngo*. In that case, the court found egregious harm because the prosecutor encouraged the jury to reach a non-unanimous verdict. *Ngo*, 175 S.W.3d at 750–51. In a similar manner, here the State's attorney assumed the indictment alleged various manner and means of committing a single offense, not separate offenses. Thus, she told prospective jurors during her voir dire examination:

---

(c) *A person commits an offense if* the person transports litter or other solid waste to a place that is not an approved solid waste site for disposal at the site.

Tex. Health & Safety Code Ann. § 365.012 (emphasis added).

4. By this logic, an actor who penetrates the sexual organ of his child victim with his own sexual organ commits, in one act, two separate and distinct offenses for which he may be separately convicted. *See* Tex. Penal Code Ann. § 22.021(a)(B)(i) and (iii) (Vernon Supp. 2006). While this holding raises obvious double jeopardy concerns, we are, as an interme-

diate appellant court, instructed by it. *Hendrix v. State*, 150 S.W.3d 839, 860 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (Hudson, J., concurring).

5. In light of *Ngo*, if an actor, who has no money, steals a credit card and uses it to make a single purchase, he can now be convicted of not one, but five different offenses. Tex. Penal Code Ann. § 32.31(b)(1), (3), (4), (7), and (8).

6. *Almanza*, 686 S.W.2d at 171.

Now, what's important here is that I've alleged each of those ways. However, *if at the close of testimony four of you-all believe that he transported, four of you believe he disposed of it, four of you believe that he received it,* if you are unanimous in your verdict then, and I prove all of my elements to you beyond a reasonable doubt, *then you find the defendant guilty.* Do you understand how that works? *All twelve of you don't have to agree that it was transport. All twelve of you don't have to agree it was received.* Okay.

And if you have any questions just stop me.

I'm going to specifically quickly run through what the judge had already read to you and I know, folks, you folks over there can't see that but I'm going to read it and the judge has already read this to you. These are the things that I have to prove. I have to show that Ricky Lynn Gandy, on or about June 14, 2004, in Harris County, Texas, for a commercial purpose, did intentionally or knowingly *either transport or dispose or receive* litter or solid waste, namely, construction and demolition waste or tree parts or mixed plastics or cardboard or food boxes or furniture or mattresses or packing foam or food or garbage.

(Emphasis added).

Likewise, during her final argument, the State's attorney reminded the jury, "I have to also show you that he either transported or—remember all these are or's— or disposed or received."

The State contends the error does not rise to the level of "egregious" error because appellant admitted to "transporting," "disposing," and "receiving" litter. Thus, the only significant issue at trial was whether appellant was lawfully operating a *recycling center* or unlawfully operating a *solid waste dump.*

In *Dixon v. State,* 201 S.W.3d 731, 735 (Tex.Crim.App.2006), the Court of Criminal Appeals held that where, as here, there is no basis in the record to believe that jurors could have found the defendant guilty of one offense, without also finding him guilty of all of the offenses alleged in the indictment, the defendant has not been harmed. Accordingly, while the record reflects the State's attorney unknowingly encouraged the jury to reach a non-unanimous verdict, it was virtually impossible for the jury to do so under the facts and circumstances of this case. Therefore, we find appellant was not egregiously harmed by the faulty jury charge. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the trial court erred in not submitting an instruction informing the jury that the "temporary storage [of litter] for future disposal" is not an offense. TEX. HEALTH & SAFETY CODE ANN. § 365.012(k).[7] Thus, appellant argues the jury was unlawfully permitted to convict him of illegal dumping even if it believed appellant was storing the waste "temporarily" for future disposal. Appellant concedes he did not object to this alleged omission in the jury charge, but claims the error is reversible under *Almanza's* egregious harm standard. However, the Court of Criminal Appeals declared in *Posey v. State,* 966 S.W.2d 57, 60 (Tex.Crim.App.

---

7. This portion of the statute states:
This section does not apply to the temporary storage for future disposal of litter or other solid waste by a person on land owned by that person, or by that person's agent. The commission by rule shall regulate temporary storage for future disposal of litter or other solid waste by a person on land owned by the person or the person's agent.

1998) that *Almanza* does not apply to "the omission in the jury charge of defensive issues that have not been properly preserved by a defendant's request or objection." The trial court simply has no duty "to *sua sponte* instruct the jury on defensive issues." *Id.* at 61. Thus, no error is presented, and appellant's second point of error is overruled.

 In his third point of error, appellant asserts the trial court erred in excluding documentary evidence offered to prove he was recycling, rather than dumping, solid waste on his property. In this regard, appellant offered numerous receipts indicating he had sold or recycled metals and other materials in 2002 and 2003. The State's attorney objected to the admission of these documents because the activity for which appellant was prosecuted occurred in 2004. The court sustained the State's objection. Appellant was, however, permitted to introduce such documents from 2004.

Error under the rules of evidence in the admission of evidence constitutes nonconstitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). A reviewing court is to disregard a nonconstitutional error that does not affect the substantial rights of the defendant. TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). The fact that appellant may not have been operating a solid waste site in 2002 and 2003 has little or no logical relevance to whether he began operating such a site in 2004. Thus, the trial court did not err in excluding the evidence. Moreover, even *if* the trial court erred in excluding the evidence, the error did not affect the substantial rights of appellant.

Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.