ACCEPTED
14-15-00083-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/2/2015 11:35:50 AM
CHRISTOPHER PRINE
CLERK

## No. 14-15-00083-CR

In the
**Court of Appeals**
For the
**Fourteenth District of Texas**
At Houston

——————◆——————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

12/2/2015 11:35:50 AM

CHRISTOPHER A. PRINE
Clerk

**No. 1420756**
In the 179th District Court
Of Harris County, Texas

——————◆——————

**MASHOOD UDDIN**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.274.5826
stelter_kimberly@dao.hctx.net
State Bar Number: 19141400

**MELISSA DICKSON**
**CARA BURTON**
Assistant District Attorneys
Harris County, Texas

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

State believes that the matters raised by the appellant are well-settled, and that the briefs in this case adequately apprise this Court of the issues and the law. Therefore, the State does not request oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Kimberly Aperauch Stelter** — Assistant District Attorney on appeal

**Melissa Dickson, Cara Burton** — Assistant District Attorneys at trial

*Appellant and counsel:*

**Mashood Uddin** — Appellant

**Carmen Roe** — Counsel on appeal

**Wilven Carter, Tyrone Moncriffe** — Defense counsel at trial

*Trial Judge:*

**Honorable Kristin M. Guiney** — Judge Presiding

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

IDENTIFICATION OF THE PARTIES ...................................................i

TABLE OF CONTENTS ................................................................ ii

INDEX OF AUTHORITIES............................................................ iii

STATEMENT OF THE CASE..........................................................1

STATEMENT OF FACTS .............................................................1

SUMMARY OF THE ARGUMENT .......................................................8

REPLY TO APPELLANT'S FIRST POIINT OF ERROR ...................................10

REPLY TO APPELLANT'S SECOND POINT OF ERROR................................21

REPLY TO APPELLANT'S THIRD POINT OF ERROR .................................24

REPLY TO APPELLANT'S FOURTH POINT OF ERROR...............................30

PRAYER ..........................................................................35

CERTIFICATE OF SERVICE .........................................................36

CERTIFICATE OF COMPLIANCE.......................................................37

# INDEX OF AUTHORITIES

**CASES**

*Almanza v. State,*
686 S.W.2d 157 (Tex. Crim. App. 1984)..................................................................... 13

*Arriaga v. State,*
335 S.W.3d 331(Tex. App. –
Houston [14th Dist.] 2010, no pet.) ........................................................................... 29

*Bluitt v. State,*
137 S.W.3d 51(Tex. Crim. App. 2004) ...................................................................... 13

*Bone v. State,*
77 S.W.3d 828 (Tex. Crim. App. 2002) ..................................................................... 22

*Curry v. State,*
30 S.W.3d 394 (Tex. Crim. App. 2000) ................................................................32, 35

*De Los Santos v. State,*
219 S.W.3d 71(Tex. App. –
San Antonio 2006, no pet.) ......................................................................................... 16

*Ellison v. State,*
86 S.W.3d 226 (Tex. Crim. App. 2002) ..................................................................... 13

*Ex Parte Imoudu,*
284 S.W.3d 886 (Tex. Crim. App. 2009)................................................................... 21

*Ex parte Varelas,*
45 S.W.3d 627 (Tex. Crim. App. 2001) ..................................................................... 22

*Fann v. State,*
696 S.W.2d 575(Tex. Crim. App. 1985)..................................................................... 32

*Gandy v. State,*
222 S.W.3d 525 (Tex. App. –
Houston [14th Dist.] 2007, no pet.)............................................................................ 18

*Malik v. State,*
953 S.W.2d 234 (Tex. Crim. App. 1997)................................................................31, 32

*Martinez v. State,*
190 S.W.3d 254 (Tex. App.—
Houston[1st Dist.] 2006, pet. ref'd) ................................................................. 15, 20

*Martinez v. State,*
212 S.W.3d 411(Tex. App. –
Austin 2006, pet. ref'd) ................................................................................ 17

*Mitchell v. State,*
68 S.W.3d 640(Tex. Crim. App. 2002) ......................................................... 22

*Ngo v. State,*
175 S.W.3d 738 (Tex. Crim. App. 2005) ...................................................... 19

*Olivas v. State,*
202 S.W.3d 137(Tex. Crim. App. 2006) ...................................................... 14

*Phillips v. State,*
597 S.W.2d 929 (Tex. Crim. App. 1980) ...................................................... 33

*Ramirez v. State,*
692 S.W.2d 729 (Tex. App.—
Waco 1985, no pet.) ....................................................................................... 33

*Reeves v. State,*
420 S.W.3d 812 (Tex. Crim. App. 2013) ...................................................... 13

*Rodriguez v. State,*
425 S.W.3d 655 (Tex. App. –
Houston [14th Dist.] 2014, no pet.) ............................................................. 26

*Rozell v. State,*
176 S.W.3d 228 (Tex. Crim. App. 2005) ...................................................... 25

*Ruiz v. State,*
272 S.W.3d 819 (Tex. App.—
Austin 2008, no pet.) ..................................................................................... 17

*Sanders v. State,*
605 S.W.2d 612 (Tex. Crim. App. 1980) ...................................................... 32

*Smith v. State,*
286 S.W.3d 333 (Tex. Crim. App. 2009) ........................................... 25, 28, 30

*Stokes v. State,*
277 S.W.3d 20 (Tex. Crim. App. 2009) ........................................................ 26

*Strickland v. Washington,*
  466 U.S. 668 (1984)..................................................................21, 23, 30

*Stuhler v. State,*
  218 S.W.3d 706 (Tex. Crim. App. 2007)................................................. 13

*Williams v. State,*
  301 S.W.3d 675 (Tex. Crim. App. 2009)................................................. 21

*Zamora v. State,*
  2010 WL 457521 (Tex. App.—
  Houston [1st Dist.]2010, no pet.)(opin. not designated for publication)...... 29

## STATUTES

TEX. PENAL CODE § 20.01(2)(B) ................................................................. 16
TEX. PENAL CODE § 20.04(a)(4) ................................................................. 14
TEX. PENAL CODE. § 20.01(2)(A)............................................................10, 16
TEX. PENAL.CODE § 9.01(3) ...................................................................... 35

## RULES

TEX. R. APP. P. 21.6 ...............................................................................25, 26
TEX. R. APP. P. 38.2(a)(1)(A) ....................................................................... i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with aggravated kidnapping (CR 6). He entered a plea of not guilty (CR 158). The jury found him guilty as charged, and the court assessed punishment at 8 years in the Institutional Division of the Texas Department of Criminal Justice (CR 158). Appellant filed timely notice of appeal, and the court certified his right to appeal (CR 161-162).

———————◆———————

## STATEMENT OF FACTS

On June 23, 2011, Savannah Dimas called her friend Susan[1] and asked her if she wanted to go out that evening (RR4 120). Susan had taken care of her ill grandmother all day and was tired, but Savannah was persistent, and Susan finally agreed to go to a club with her (RR5 120).

The two girls arrived at the club in Susan's car shortly before 11:00 p.m. (RR5 13, 122-23). They both left their phones in the car, and Savannah put Susan's car keys on a lanyard around her neck (RR5 16, 125).

---

[1] In order to protect her privacy, the State will refer to the complainant by the pseudonym "Susan." *See* TEX. CODE CRIM. PROC. art. 57.03(a) (West 2014).

For the first couple of hours, Savannah and Susan hung out together, talking and dancing (RR5 26, 136). Then appellant asked Susan to dance, and she agreed (RR5 132).

Appellant was dressed nicely and seemed respectful, and at first Susan enjoyed dancing with him (RR5 133, 134). Appellant asked for Susan's number and she gave it to him (RR5 136). She watched as he put her name and number in his phone (RR5 136).

Savannah saw Susan dancing and talking with appellant, who looked brown skinned or "ethnic" to her (RR5 31, 84). Eventually Susan stopped dancing with appellant, but appellant still followed her, which Susan felt was "weird" and "creepy" (RR5 144). She even mentioned to Savannah that appellant would not leave her alone (RR5 34). Savannah asked if Susan needed her to say something to appellant, but she declined the offer (RR5 34).

At some point in the evening Susan and Savannah were separated (RR5 146). Susan searched for Savannah while appellant continued to follow her (RR5 144). When she went to the lounge area at the back of the club during her search, appellant told her "you need to sit down" in a demanding voice (RR5 145). Susan refused to sit, but appellant ignored her and aggressively pushed her down onto a couch (RR5 146, 149). By this

point Susan was thinking that appellant was "a total creep," so she told him to stay away from her and that she was leaving (RR5 147).

Susan did leave the club at this point, hoping that since Savannah had her keys she might be at the car (RR5 147-48). As she was walking, she heard another car come speeding down the road (RR5 149, 152). The car came to an abrupt halt next to her, and Susan could feel someone pushing her towards the vehicle; she turned and recognized appellant (RR5 156). The driver of the car got out, pushed her into the back seat, and got in after her (RR5 156, 159). Appellant, meanwhile, took the other man's place in the driver's seat and drove away from the club (RR5 156, 159).

Susan was terrified, and asked the men where they were going (RR5 158). They replied that they were "going to take a ride" (RR5 159).

The original driver, who was the biggest and heaviest of the two, got on top of Susan in the back seat (RR5 159). She tried to push him off, but he was much bigger than her. Still, Susan fought back, until the man punched her in the face, which "busted" her lip (RR5 159). At that point she stopped struggling because she didn't want him to hit her anymore (RR5 162).

The man took off Susan's shoes and underwear, pulled up her dress, put on a condom, and sexually assaulted her (RR5 168). As he lay on top of her he sucked on her neck, leaving "hickey" marks in several places (RR5

168, State's Exhibits No. 1-3).  The man's breath was bad, and made her nauseous (RR5 169). She tried to focus on something other than what was happening to her, and appellant kept staring back while he drove, so she focused on his face instead (RR5 169).

Eventually the man finished, allowing Susan to sit up and pull down her dress (RR5 171).  Appellant and the other man then started speaking to each other in a language Susan could not understand (RR5 173).[2] Susan started crying and begging them to let her go home (RR5 174).

Eventually they stopped at an abandoned parking lot and stood watch while Susan relieved herself (RR5 174). When they got back in the car appellant and the other man switched places; appellant moved to the back seat with Susan while the other man drove (RR5 174). Like the previous assailant, appellant pushed Susan down on the back seat and tried to put his penis into her vagina, but he had difficulty doing so (RR5 176). The attempt was very painful for Susan, and finally she was able to push him away (RR5 177). Appellant then switched to forcing Susan's head down on his penis, but again she resisted, and eventually appellant gave up (RR5 177).  Instead he

---

[2] Although Susan has a Hispanic surname she does not speak Spanish and thought at first the two might have been speaking Spanish, which led her to believe her assailants might be Hispanic.  Later she realized none of the words sounded familiar to her and identified both the language and the appellant as being "Arabian" or "Arabic." (RR5 172, 307).

pulled up his pants, sat next to Susan in the back seat, and put his arm around her as if they were on a normal date (RR5 180).

The two men continued to drive around for another thirty minutes while Susan begged them to let her go (RR5 182). Finally they took Susan back to the nightclub, where they released her and drove away (RR5 182).

It was around 4:00 in the morning, and there were two people outside who looked like they were closing the club (RR5 187). Susan told them her situation, and one of them let her use their phone to call Savannah (RR5 187).[3] Savannah could tell that Susan was scared and stressed, and she sounded as if she had been crying, so Savannah and her boyfriend came to pick her up right away (RR5 39, 41).

When Savannah arrived back at the club she found Susan disheveled and distressed, with her make-up running and her shoes missing (RR5 42, 109). Susan got in the car, where Savannah could see injuries to her neck, blood by her nose, and her "busted lip" (RR5 46, 114). She was crying and in shock, and told Savannah that she had just been sexually assaulted by two men (RR5 48). Savannah was concerned, and wanted to take Susan to the hospital, but she insisted she wanted to go home instead (RR5 48).

---

[3] Savannah had looked for Susan at the club and couldn't find her. Eventually she left, but went to a nearby boyfriend's house to wait and see if Susan would call (RR5 38).

When Susan got home she called her best friend Amanda, who came over to be with her (RR5 191, 193). Shortly after Amanda arrived, Susan received a call from a blocked number (RR5 192). She answered the call on speakerphone (RR5 192). It was appellant (RR5 192). He asked what Susan was doing and what time she got home (RR5 192). Amanda was so furious that she started screaming at appellant, and told him that they were going to go to the police (RR5 192-93). Appellant immediately hung up (RR5 193).

Amanda took Susan to the hospital, where she reported the kidnapping and sexual assault (RR5 193). Sandra Sanchez, the sexual assault nurse who examined Susan, observed the fresh abrasion on Susan's upper lip where she had been punched (RR7 31, 36). She also observed and photographed the marks on Susan's neck, and made notations of other bruised and tender areas where Susan had been restrained and pushed (RR5 199-200, Exhibit No 22, 23). Finally, she swabbed Susan's genital area and included it in the rape kit for later testing (RR7 45).

Appellant called Susan again, a few weeks later, and she reported it to the police (RR5 213). They asked her to get a voice recorder and tape the

conversations between appellant and herself (RR5 213).[4] During the calls appellant was very evasive, gave a fake name, and would not give out his address, despite Susan's efforts to discover this information (RR5 212). Instead, appellant kept wanting to meet Susan somewhere, and the calls grew increasingly vulgar and aggressive on his part (RR5 214-15).

Finally, with the police listening in and telling her what to say, Susan agreed to meet appellant at a nightclub called Rick's (RR5 216). Appellant told Susan when he would be there, what he would be wearing, and where he would be standing. From this information, Officer Weiners, who was in plain clothes, was able to locate appellant and three of his friends waiting outside the nightclub (RR6 124). As he approached, Weiners could hear Susan talking to appellant on his phone, as well as hear the call from Susan's end (RR6 125-26).

Weiners signaled to some uniformed officers to detain the appellant and the three other men (RR6 126). Weiners then walked up to the group and asked them who had been calling Susan (RR6 128). At that point, appellant began frantically scrolling through his cell phone as if he were trying to delete something (RR6 128-29).

---

[4] Officer Wiener called the number that appellant was calling from, but when he did it somehow came back with a message that it was out of service (RR6 117).

Weiners subsequently created a photo spread, where Susan immediately identified appellant as one of the two men who sexually assaulted her (RR6 134-35, State's Exhibit No. 19). A sample of appellant's DNA was then compared to DNA on the swab collected during Susan's sexual assault exam (RR7 71). While the DNA collected from Susan's genital area contained a "mixture," meaning at least two males had contributed to the DNA sample, appellant's DNA fit as a possible contributor to the mixture (RR7 75). The probability that a randomly chosen unrelated individual would be included as a possible contributor to this DNA mixture was approximately 1 in 9,600 for Caucasians; 1 in 49,000 for African Americans; 1 in 950 for Southeast Hispanics; and 1 in 5,500 for Southwest Hispanics (RR7 78).

———————◆———————

## SUMMARY OF THE ARGUMENT

Appellant was not egregiously harmed by the jury charge as given. The charge as a whole, the evidence, the final arguments by the State and the defense as well as the law explained in voir dire and the defensive theory of the case all established that the jury would have to find both that appellant

abducted the complainant by secreting or holding her in a place where she was not likely to be found and that he did so with the intent to violate or abuse her sexually.

Counsel was not ineffective for failing to object to the jury charge as given. Even if counsel were deficient, this one isolated error did not render counsel's performance ineffective, and there was no reasonable probability that the alleged error affected the outcome of the case given the state of the evidence and the factors discussed above.

The trial court did not err in failing to hold an evidentiary hearing on appellant's motion to suppress. The request for a hearing was not timely presented, and even it if were, a hearing was not necessary because the trial court could determine from the allegations in the motion that counsel was not ineffective, as appellant failed to establish the possibility of prevailing under either prong of *Strickland*.

Finally, appellant's conviction did not violate his right to due process, as the evidence was sufficient to convict appellant of aggravated kidnapping.

————————◆————————

Appellant first alleges error in the jury charge. It is appellant's contention that this jury charge error resulted in egregious harm, allowing the jury to convict him on a non-unanimous verdict and denying him due process of law.

**The Indictment and the Jury Charge**

Appellant was charged and convicted of committing aggravated kidnapping (CR 6). Specifically, the indictment alleged that appellant:

> on or about JUNE 24, 2011, did then and there unlawfully, intentionally and knowingly abduct [the complainant], hereafter styled the Complainant, without her consent, with intent to prevent her liberation by secreting and holding the Complainant in a place where the Complainant was not likely to be found and with intent to violate and abuse the Complainant sexually.

TEX. PENAL CODE. §§ 20.01(2)(A); 20.04(a)(4).

The application paragraph of the jury charge essentially tracked the indictment, with the addition of language allowing the jury to convict appellant as a party to the offense (CR 127-128).

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of June, 2011, in Harris County, Texas, the defendant... did then and there unlawfully, intentionally, or knowingly abduct [the complainant], without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found or with intent to violate or abuse [the complainant] sexually, or if you find from the evidence beyond a reasonable

doubt that on or about the 24th day of June, 2011, in Harris County, Texas, another person or persons, did then and there unlawfully, intentionally, or knowingly abduct [the complainant], without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found or with intent to violate or abuse [the complainant] sexually, and that the defendant... with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid the other person or persons to commit the offense, if he did, then you will find the defendant guilty of aggravated kidnapping, as charged in the indictment.

(CR 127-28). In drafting this portion of the charge, however, one word was changed; the conjunctive "and" in the phrase; "by holding [the complainant] in a place where she was not likely to be found *and* with intent to violate or abuse [the complainant] sexually" was replaced by the disjunctive "or"; "by holding [the complainant] in a place where she was not likely to be found *or* with intent to violate or abuse [the complainant] sexually" (CR7 128).

In addition, the abstract portion of the charge included the definition of "abduct" as that stated under § 20.01(2)(B), thus reading as follows:

the term "abduct" means to restrain a person with intent to prevent her liberation by using or threatening to use deadly force.[5]

---

[5] For purposes of the aggravated kidnapping statute, the State may prove that a person was "abducted" in one of two ways: by restraining a person with intent to prevent his liberation by (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force. TEX. PENAL CODE § 20.01(2).

11

(CR 126). The charge and the indictment, however, already included the first definition of "abduct" in the body of the charge itself. Thus the charge, as given, appeared to require the jury to find that *both* definitions of the term "abduct" needed to be proved. The application paragraph, when substituted with the definition of "abduct," effectively required that the jury find that the appellant:

> did then and there unlawfully, intentionally, or knowingly restrain [the complainant] with intent to prevent her liberation by using or threatening to use deadly force, without her consent, and with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found or with intent to violate or abuse [the complainant] sexually.

In either case, whether the jury found an intent to prevent liberation by secreting or holding or whether they found an intent to violate or abuse sexually, the State would have to prove some form of abduction, namely, an intent to prevent liberation by using or threatening to use deadly force.

Appellant argues that because of the change of the word "and" to "or" in the application paragraph, the jury might have believed that they could convict appellant of aggravated kidnapping if the defendant abducted the complainant, as the term "abduct" is defined under § 20.01(B) *and* abducted the complainant, as the term "abduct" is defined under § 20.01(A) <u>or</u> abducted the complainant, as the term abduct" is defined in under §

12

20.01(B) *and* found that he did so "with intent to violate or abuse the complainant sexually (appellant's brief, p. 22). Appellant made no objection to the charge (RR7 105).

### Appellant has not shown that he suffered egregious harm from the alleged error

Because appellant made no objection to the trial court's charge, he must establish that he suffered egregious harm from the error in order to warrant reversal of his conviction. *Bluitt v. State,* 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In other words, appellant must show he suffered harm so egregious that he was denied a fair and impartial trial. *Id.*

Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State,* 86 S.W.3d 226, 227 (Tex. Crim. App. 2002) "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State,* 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). The harm analysis takes into consideration "1) the charge itself; 2) the state of the evidence, including contested issues and the weight of the probative

evidence; 3) final arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Looking at these four factors, it is evident that appellant suffered no egregious harm.

### 1. The Entire Jury Charge

The abstract portion of the jury charge correctly set forth the offense of aggravated kidnapping, by instructing the jury that:

> A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to violate or abuse her sexually.

(CR 126). Thus the jury was instructed that they could not find that the appellant committed aggravated kidnapping without finding the aggravating element – that the kidnapping be done "with the intent to violate or abuse [the victim] sexually." TEX. PENAL CODE § 20.04(a)(4). In addition, the application paragraph instructed the jury that they were deciding whether appellant was guilty of "*aggravated kidnapping, as charged in the indictment*," and again "your sole duty at this time is to determine the guilt or innocence of the defendant *under the indictment in this cause*." (CR 128, 131). As will be discussed below, the jury was read the indictment and went over all the elements of the indicted offense at length during voir dire. The indictment clearly required the jury to find that appellant committed the

14

offense with the intent to violate or abuse Susan sexually, which made this case aggravated kidnapping. That, in addition to the definition of aggravated kidnapping in the abstract portion of the charge, would have reminded the jury that they had to find that appellant committed all the elements of aggravated kidnapping. *Martinez v. State*, 190 S.W.3d 254, 260-61 (Tex. App.—Houston[1st Dist.] 2006, pet. ref'd) (finding no egregious error in disjunctive jury charge which authorized non-unanimous verdict, when error "was ameliorated in another portion of the charge or by instructions from the trial court")

If anything, appellant benefited from the jury charge as given, as the jury would have been led to believe that the State had a *higher* burden to prove aggravated kidnapping. As appellant mentions, the  definition of "abduct" in the abstract portion of the jury charge included only the second means of abduction—"to restrain a person with intent to prevent her liberation by using or threatening to use deadly force.". *See* TEX. PENAL CODE § 20.01(2)(B).  The other manner of abduction—"by secreting or holding [a person] in a place where [they] are not likely to be found"— was included in the language of the charge itself. TEX. PENAL CODE § 20.01(2)(A).  Thus the charge as given would have led the jury to believe that the State had to prove both methods of abduction; in other words to find that appellant, as the

15

primary actor or as a party, used or threatened to use deadly force to prevent Susan's liberation[6] *in addition* to finding that, as the primary actor or as a party, he prevented her liberation by placing her in a place was she was not likely to be found.[7]

Given the charge in its entirety, including the instruction that aggravated kidnapping required proof that the defendant "abduct another person with the intent to violate or abuse her sexually," the jury would understand that it had to find both that there was an abduction and that the abduction occurred with the intent to violate or abuse her sexually, as charged in the indictment. *De Los Santos v. State*, 219 S.W.3d 71, 78 (Tex. App. –San Antonio 2006, no pet.) (holding no egregious error in context of entire jury charge).

## 2. The State of the Evidence

The evidence introduced in this case also favors the conclusion that any charge error did not cause egregious harm. The State introduced sufficient evidence supporting each element of the offense of aggravated kidnapping. This evidence, which is not contested by appellant on appeal, came from Susan, who described the event in detail. It is unlikely that the

---

[6] The definition of abduct under TEX. PENAL CODE § 20.01(2)(B).

[7] The definition of abduct under TEX. PENAL CODE § 20.01 (2)(A).

jury would have believed that she was kidnapped, but not sexually assaulted, or sexually assaulted, but not kidnapped, as the two events were inextricably intertwined. If the jury found her a credible witness, which it clearly did, it had to conclude that her explanation of the events that night was truthful, both as to the abduction and the fact that the abduction was done with the intent to violate or abuse her sexually. The intent to commit a sexual assault was the motive for the abduction. Quite frankly the sequence of events would not make sense any other way.

Appellant's defensive theory was also unaffected by the charge. Appellant rested after the State's case, calling no witnesses. His defense, developed through his cross-examination, was to prove that Susan's identification of appellant was incorrect (RR6 7-8, 38-39, 45-46). He presented no evidence suggesting that he was guilty of just abduction or just the sexual aspect of the crime. Thus this factor also indicates that a disjunctive jury charge did not affect the outcome of this trial. *Ruiz v. State*, 272 S.W.3d 819, 826 (Tex. App.—Austin 2008, no pet.) (finding no egregious error in jury charge allowing non-unanimous verdict when defendant "did not attempt to argue that he was only guilty of some of the allegations; his theory of the case was that he had not committed any of the alleged conduct"). *Martinez v. State*, 212 S.W.3d 411, 421 (Tex. App. –Austin 2006,

17

pet. ref'd)(holding there was not egregious error in non-unanimous jury charge when trial strategy left the jury with "an all-or-nothing decision" that defendant was guilty or he was not.); *Gandy v. State*, 222 S.W.3d 525, 531 (Tex. App. –Houston [14th Dist.] 2007, no pet.)("while the record reflects that the State's attorney unknowingly encouraged the jury to reach a non-unanimous verdict, it was virtually impossible for the jury to do so under the facts and circumstances of this case").

### 3.  Final Argument of Parties

The final arguments made by the parties also weighs in favor of finding no egregious error. In closing argument, appellant never argued that he was guilty of abduction but not the sexual aspect of the crime, or vice versa. Rather, he reiterated his theory brought out by his cross-examination, that he did not commit *any* of the acts the State charged him with.[8]  Similarly, the State never argued that the jury could convict appellant without finding that he abducted her, or that he intended to violate or abuse her sexually. Instead, the State fully accepted the burden of proving both the element of abduction and that the abduction was with the intent to violate or abuse

---

[8] MR. MONCRIFFE: [In closing argument for the defense]: "[Y]ou tell me if this is the voice of someone who's talking to a man who allegedly has kidnapped her and raped her...." (RR7 110).

18

Susan sexually, as alleged in the indictment.[9] *cf. Ngo v. State*, 175 S.W.3d 738, 750-51 (Tex. Crim. App. 2005) (where prosecutor told the jury in closing arguments that they need not be unanimous in their verdict).

### 4) Any other Relevant Information Revealed by the Record

Finally, it is important to note that at voir dire, the discussion on the elements of aggravated kidnapping was both lengthy and correct. During voir dire, the trial court read the indictment to the jury (RR3 28) The court then listed all the elements, or "main things" that the State had to prove beyond a reasonable doubt, particularly the very last clause of the indictment "with the intent to violate and abuse the Complainant sexually" (RR3 27-28).

Next, the State discussed all the elements it had to prove beyond a reasonable doubt, including, once again, abduction by "secreting and holding in a place [where the person is] not likely to be found" and "with intent to violate sexually" (RR3 51, 56, 57-58, 60). Finally, the defense discussed with the jury the fact that they would be listening to a witness who claimed she was both "kidnapped and sexually assaulted," and that they would have to "convict a person of aggravated kidnapping, [with a] sexual assault component to it

---

[9] MS. DICKSON [In closing argument for the State]: "Is it reasonable to believe that on June 24th Susan was not abducted? No way. We know that element. Is it reasonable to believe that she was abducted and sexually assaulted without her consent? It's absolutely reasonable to believe that all of those elements have been met." (RR7 108-109).

19

(RR2 160, 164). *cf. Ngo v. State*, 175 S.W.3d at 750-51 (where jury was told by both prosecutor and court during voir dire that they need not return a unanimous verdict). Thus, from the beginning of voir dire until the completion of closing arguments, the jury was repeatedly told, by the court, the State, and the defense, that they had to find appellant both abducted Susan by secreting or holding her in a place where she was not likely to be found and that he did so with the intent to violate or abuse her sexually. *Martinez v. State*, 190 S.W.3d 262 (Finding no egregious error when, other than a brief statement by the State during voir dire, there was no other comment or argument made regarding the disjunctive jury charge.).

Finally, there is no indication that the jury was misled by the charge. They asked no questions indicating that they were confused about the evidence required for conviction, and took a little under two hours to deliberate before reaching their verdict as to guilt or innocence (CR 192).

Looking at the jury charge as a whole, the state of the evidence, final arguments, and the discussion of the law during voir dire, the jury was aware from the beginning of what the State was required to prove for a conviction of aggravated kidnapping, and the State never wavered from its duty. Appellant did not suffer egregious harm by the wording of the application paragraph in this case. His first point of error is without merit, and should be overruled.

———————————◆———————————

## **REPLY TO APPELLANT'S SECOND POINT OF ERROR**

Appellant contends in his second point of error that his trial counsel was ineffective for failing to object to the jury instruction discussed in his first issue presented. The record, and in particular the evidence and argument discussed above, establishes appellant did not receive ineffective assistance of counsel.

### **Standard for review on ineffective assistance of counsel**

To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668 (1984); *Ex Parte Imoudu*, 284 S.W.3d 886, 869 (Tex. Crim. App. 2009). Failure to make either one of these required showings defeats an ineffectiveness claim. *See Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

21

A reasonable probability is one sufficient to undermine confidence in the outcome of a case. *Strickland,* 466 U.S. at 687; *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). It is not enough for an appellant to show that the errors, if any, had some conceivable effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 687; *Ex parte Varelas,* 45 S.W.3d 627, 629 (Tex. Crim. App. 2001). Rather, this stringent burden requires that appellant point to objective facts in the record to support lack of confidence in the conviction, i.e. proof of prejudice. *Bone v. State,* 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).

**<u>Appellant has not established that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.</u>**

Appellant cannot prevail on an ineffective assistance of counsel claim, as he cannot demonstrate that he was harmed by the jury charge as given.[10] In fact, it was better for appellant to have this charge in its entirety before the jury than to have objected to the charge and made the corrections appellant claims were necessary.

---

[10] The State does not concede that failing to object to the jury charge was error of such a magnitude that counsel's performance fell below an objective standard of reasonableness, as it is the only mistake counsel alleges in a proceeding covering several days, and the resulting charge could actually be viewed as beneficial to appellant, as discussed below. Instead, the State is saying that inquiry ends once appellant fails to prove either prong, and the lack of prejudice here is clear.

As the charge was given, jury could have believed that it had to find both methods of abduction; that appellant, individually or as a party, restrained Susan with the intent to prevent her liberation (1) by "secreting or holding her in a place where she was not likely to be found" (as charged in the indictment and included in the application paragraph) AND (2) by using or threatening to use deadly force (as "abduct" was defined in the abstract portion of the charge.). Since evidence of the use or threat of use of deadly force was weaker than evidence of appellant being secreted or held in a place where she was not likely to be found (the vehicle in this case) the defendant could only stand to benefit from this portion of the charge.

Similarly, and as discussed above, there is no reasonable probability that the jury would have seen the evidence differently and found appellant innocent if the jury charge had been corrected and the disjunctive wording removed. As discussed in the previous point of error, the indictment, the voir dire, the evidence, the closing argument of the parties, and even the definition of aggravated kidnapping included in the jury charge all informed the jury that they needed to find the victim was abducted with the intent to violate or abuse her sexually. Neither the evidence nor the defensive theory of the case left an option for finding that the victim was abducted without the intent to violate or abuse her sexually. The State accepted their burden,

23

from voir dire to closing arguments, to prove all the elements of the crime, and they did so. Thus, there is no reasonable probability that the outcome of this trial would have been different but for trial counsel's failure to object to the jury charge. *Strickland,* 466 U.S. at 693.[11]

Because appellant did not affirmatively prove prejudice, the second prong of Strickland, he cannot prevail on his second point of error alleging ineffective assistance of counsel.

————————◆————————

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

Appellant bases his third point of error on the belief that the trial court erred in denying a hearing on his motion for new trial. Appellant filed his notice of appeal January 12, 2015, and his motion for new trial February 11, 2015. The grounds stated in appellant's motion for new trial were jury

---

[11] Appellant, in his harm analysis, asks this Court to assume what the result would be if counsel objected to the charge but the judge did not correct the error. In this case, appellant argues, he would only have to prove "some harm" vs. "egregious harm" on appeal. However, there is no reason to believe that the trial court would not have made the correction to change the disjunctive back to the conjunctive if the error had been pointed out (and most likely corrected the definition of "abduct" as well, which would be to appellant's detriment). The proper standard for the second prong of the *Strickland* test is whether there is a reasonable probability that, but for charge given, the result of the proceeding would have been different, not whether appellant could have objected but been unsuccessful in his objection so as to change the standard of review on appeal.

charge error and an ineffective-assistance-of-counsel claim based on the failure to object to jury charge error.[12]

A trial court's decision to conduct a hearing on a motion for new trial is reviewed on appeal for abuse of discretion. *Smith v. State,* 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The trial court's decision should be reversed only when it is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

The purpose of a hearing on a motion for new trial is to decide whether the case should be retried and prepare a record for presenting issues on appeal in the event the motion is denied. *Id.* at 338. The right to a hearing on a motion for a new trial is not absolute. *Id.* To be entitled to a hearing on his motion for new trial, the defendant must first request one. *Rozell v. State,* 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). The defendant also must satisfy the procedural requirements that the motion be timely filed and actually presented to the trial court within ten days of the motion's filing date, unless the court extends that time period. TEX. R. APP. P. 21.6; *Stokes v. State,* 277 S.W.3d 20, 21 (Tex. Crim. App. 2009); *Rodriguez v. State*, 425 S.W.3d 655, 660-61 (Tex. App. –Houston [14th Dist.] 2014, no pet.).

---

[12] Appellant also argued in his motion for new trial the charge included the wrong culpable mental state for the crime (CR 176). Appellant does not raise this issue as error or a reason for requiring a hearing on his motion for new trial on appeal.

If those procedural demands are met, the trial court is obligated to hold a hearing only when two additional substantive requirements are also fulfilled: the motion for new trial must raise matters which cannot be determined from the record, and the particular matters raised must establish that reasonable grounds exist that could entitle the defendant to relief. *Smith,* 286 S.W.3d at 339; *Rozell,* 176 S.W.3d at 230.

### **Appellant has not established that he timely requested a hearing on his motion for new trial.**

The docket sheet reflects that appellant's motion for new trial was filed February 11, 2015 (CR 193). The court denied the motion for new trial on February 16, 2015 (CR 193). However, the docket sheet notes that the trial court did not deny appellant's request for a hearing on the motion for new trial until March 5, 2015 (CR 193). Thus, it appears that the request for a new trial hearing itself was not presented within the ten day requirement of TEX. R. APP. P. 21.6.

This is consistent with the trial court's notations on the order pages of the motion for new trial itself. The page presenting the motion for new trial stated "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that this Motion for New Trial *be ruled on by February 16, 2015.*" The wording between the two asterisks was handwritten on the order, replacing the

26

crossed-out phrase "be set for an evidentiary hearing on the ___ day of ___, 2015, in the 179th District Court of Harris County, Texas at 9:00." (CR 185). The same page also includes a handwritten notation "Request for hearing denied" next to the date-stamp of March 5, 2015.The following page is the order itself, which was denied February 16, 2015 (CR 186). This order page did not include a request for a hearing. Based on the notations on the motion, it appears that the judge ruled and denied the motion for new trial on February 16, 2015, but did not see or rule on the order to present the motion for new trial, which requested the actual hearing, until March 5, 2015.  Since appellant has failed to establish that he presented the order requesting a hearing on the motion for new trial until after the 10-day period, he has failed to comply with the requirements of TEX. R. APP. P. 21.6.

**<u>Appellant was not entitled to a hearing on his motion for new trial</u>**

Even if appellant had timely presented his request for a new trial hearing, the trial court did not err in failing to hold a hearing since the motion did not raise facts requiring one. The Texas Court of Criminal Appeals has held that to be entitled to a hearing on a motion for new trial based on claims of ineffective assistance of counsel, a defendant must "allege sufficient facts from which a trial court could reasonably conclude *both* that

counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith,* 286 S.W.3d at 341 (emphasis in the original); *See also Strickland,* 466 U.S. at 694 (providing standard of review for claims of ineffective assistance of counsel). "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Smith*, 286 S.W.3d at 340. The record must bear out assertions of prejudice from the alleged deficiencies in counsel's performance. *Id.,* at 342.

The trial court judge could have determined from the record and her memory of the events at trial that appellant failed to allege sufficient facts to require a hearing on the motion. For example, the trial court could have found that the sole action of failing to object to the jury charge was not enough to rise to the level of ineffective assistance of counsel. The trial court could have also determined from the record, using the analysis in the first point of error above, that there was no reasonable likelihood the outcome of the trial would have been different if trial counsel had objected to the jury charge. *Arriaga v. State*, 335 S.W.3d 331, 337 (Tex. App. –Houston [14th Dist.] 2010, no pet.)(ruling a hearing on defendant's motion for new trial was

28

unnecessary when "… the trial court could have concluded without the necessity of a hearing that the appellant suffered no prejudice from any alleged deficiency on appellant's trial counsel's part."); *Zamora v. State*, 2010 WL 457521, at *4 (Tex. App.—Houston [1st Dist.]2010, no pet.) (not designated for publication) (holding no hearing necessary on motion for new trial when "affidavit merely alleges error by trial counsel but does not indicate, through facts and non-conclusory testimony how, but for these errors, his trial could have come out differently.").

As mentioned in the previous points of error, the issue in this case was simple: either appellant committed the aggravated kidnapping of Susan or he did not. Defense counsel never argued that appellant kidnapped Susan but did not intend to sexually assault her, or that she was sexually assaulted but not kidnapped. Instead, his argument was that neither offense happened. In addition, the indictment, the voir dire, the evidence, and the argument of the State and the defense all assumed that appellant either committed aggravated kidnapping with the aggravated element of intent to violate or abuse the complainant sexually, or that he committed no offense at all. *Smith,* 286 S.W.3d at 342.

Holding a hearing would not have established or provided any evidence on whether appellant was prejudiced by the jury charge given.

29

Thus, the trial court could have presumed error and still not held a hearing, because she could determine from the record that appellant was not prejudiced. *See Smith*, supra (appellant not entitled to hearing on motion for new trial because he failed to raise facts to establish that he could prevail under the prejudice prong of *Strickland*); *See also Arriaga v. State*, 335 S.W.3d at 337.

Since the request for a hearing on appellant's motion for new trial was not timely presented, and since a hearing was not necessary when the trial court could determine the merits of the motion without a hearing, the trial court did not err in ruling on the motion without a hearing. Appellant's third point of error is without merit, and should be overruled.

————————◆————————

## REPLY TO APPELLANT'S FOURTH POINT OF ERROR

Appellant's fourth and final point of error is that his conviction for aggravated kidnapping violated his due process rights. Specifically, appellant claims that that the record shows a complete lack of evidence to support his conviction.

Appellant bases this argument on the definition of "abduct" included in the abstract portion of the jury charge. That instruction defined "abduct" as

30

"to restrain a person with intent to prevent her liberation by using or threatening to use deadly force," but did not include the second definition of "abduct" as "secreting or holding him in a place where he is not likely to be found" (CR 126). TEX. PENAL CODE § 20.01(2)(A),(B). Appellant argues that there is insufficient evidence to prove that appellant, either himself or as a party, abducted Susan by "using or threatening to use deadly force."

This argument is without merit. The legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This hypothetical charge would set out the law, be authorized by the indictment, not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describe the particular offense for which the defendant was tried. *Id.* When the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, "the law" for purposes of the hypothetically correct charge, is the single method alleged in the indictment. *Id.* at 255.

Under a hypothetically correct jury charge, the definition of "abduct" would include the second means of abduction "by secreting or holding a person in a place where he is not likely to be found," and the evidence is

31

sufficient on this ground. *See Fann v. State,* 696 S.W.2d 575, 576 (Tex. Crim. App. 1985) (holding that victims in car driven in shifting path through city streets sufficient evidence of keeping victims isolated from being found or receiving assistance); *Sanders v. State,* 605 S.W.2d 612, 614 (Tex. Crim. App. 1980) (holding that driving victim around in car on city streets for an hour sufficient evidence of secreting and holding victim in place not likely to be found);. It is important to note that this form of abduction was also included in the application paragraph, thus allowing the jury to find appellant guilty under this theory (CR 127-128). Appellant has established no due process violation, since the evidence is sufficient to prove aggravated kidnapping as charged in the indictment. *Malik.* 953 S.W.2d at 240; *Curry v. State,* 30 S.W.3d 394, 407 (Tex. Crim. App. 2000)(holding that hypothetically correct jury charge would have included the "deadly force" definition for abduction, and evidence was sufficient to convict defendant under such a charge.)

Finally, even if the State were required to prove that the method of abduction in this case was by "using or threatening to use deadly force" the evidence would still be sufficient. "Deadly force" is defined in the penal code as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. Tex. Penal.Code § 9.01(3). However, the term "deadly force" used in section

20.01(2)(B) is not limited to the technical definition of that term in section 9.01(3). *Ramirez v. State,* 692 S.W.2d 729, 731 (Tex. App.—Waco 1985, no pet.) (citing *Phillips v. State,* 597 S.W.2d 929, 934 (Tex. Crim. App. 1980)). When threatening to use deadly force, a deadly weapon does not have to be used or exhibited. *Id.* at 732. Finally, a threat can be communicated to a victim by acts, words, or deeds. *Id.*

While appellant might not have threatened deadly force himself, the charge allowed for his conviction as a party, and appellant's larger, more aggressive partner certainly threatened deadly force. Susan testified that when she attempted to fight him, he punched her in the face so hard that he "busted my lip, which scared me even more than I already was. So I just figured that if I didn't want him to hit me anymore, I might as well let him do what he had to do and stop fighting *so that maybe I could get out of this alive."* (RR5 162) (emphasis added). Later she described the force of the blow and the fear it evoked in her:

> Q: And describe for me how he hit you. What part of your face was hit?
>
> A: My lip was – he just hit me in the mouth and punched me in my lip and my lip was busted on one side.
>
> Q: Did he punch you on any part of your cheeks?

33

A: His fist was big enough that it did hit my lip and then part of my cheek, yes.

.....

Q: What was the kind of –did he use an open hand or a closed hand.

A: He used a closed hand.

Q: What kind of force was he using when he punched you?

A: He hit me pretty hard, not enough to break my face but, I mean, enough to, you know, slice up my lip a little bit. It wasn't bleeding profusely, but it was bleeding enough to where I could taste it in my mouth.

Q: What does he say to you after he does that?

A: He tells me I need to calm down and shut up.

Q: And at that time, did you continue to resist him?

A: I didn't.

(RR5 166-167).

This testimony was sufficient to find that appellant abducted Susan by using or threatening to use deadly force. *See Ramirez,* 692 S.W.2d at 732 (concluding that a verbal threat of "do as he said, 'if she valued her life,'" standing alone, was sufficient to prove the defendant threatened to use deadly force). *Curry v. State,* 30 S.W.3d 407 (holding evidence sufficient to prove abduction by threat of deadly force, "namely a firearm" when another witness testified that they saw appellant with a gun earlier that evening).

Appellant's fourth and final point of error is without merit, and should be overruled.

———————◆———————

**PRAYER**

The State respectfully requests that this Court affirm the judgment of the trial court.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/Kimberly Aperauch Stelter

KIMBERLY APERAUCH STELTER
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument is being served by EFileTXCourts.Gov e-filer to the following email address

Carmen Roe
Attorney at Law
440 Louisiana, Suite 900
Houston, Texas  77002
carmen@carmenroe.com

/s/Kimberly Aperauch Stelter

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of **9,008** words, based upon the representation provided by the word processing program that was used to create the document.

/s/Kimberly Aperauch Stelter

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 274-5826
TBC No. 19141400
stelter_kimberly@dao.hctx.net

37